*In the matter of the Estate of Ann Biddle, deceased.*

LOUIS G. PICOT, LEGATEE IN TRUST FOR ANN B. HARNEY (DE THURY), Plaintiff in Error, *v.* JOHN O'FALLON, EXECUTOR OF ANN BIDDLE, DECEASED, Defendant in Error.

*Administration — Settlements — Judgments.* — The annual settlements of the administrators are not conclusive upon the parties interested in the estate, but they may at the final suggest and show errors in the previous settlements.

*Error to St. Louis Circuit Court.*

*L. G. Picot* and *C. Gibson,* for plaintiff in error.

*R. M. Field.*

The important question presented in this case is as to the effect of the annual settlements made by the executor in the progress of the administration, and which, according to the formal course of accounting in the probate court, became the basis of the final settlement.

On the one hand, it is contended that these annual settlements were conclusive in their character, precluding all inquiry into their justness or propriety and possessing the binding force of judgments.

On the other hand, it is insisted that these *ex parte* settlements are open to examination, and all errors and wrongs that may be made to appear are to be corrected and redressed in the final accounting.

3—VOL. XXXV.

It is a principle of jurisprudence founded in natural justice, that no person is bound by proceedings to which he was not a party, or of which he had no notice. As a general rule such proceedings are wholly inadmissible in evidence. They are rejected as being *res inter alios acta*. The applications of this principle are so numerous and familiar that they need not be particularly cited. One of the most striking occurs in the case of judgments. If these are rendered without previous notice to the adverse party, they are void.

Under our administration law an executor is not required to give any previous notice of his annual settlements. In fact in the present case it is not pretended that any notice was given to the parties in interest. The settlements consisted of mere statements of account by the executor, subjected to no scrutiny, and accepted and recorded by the judge of probate. Surely it would be a plain violation of justice, and a departure from all the analogies of the law, to hold the mere *ex parte* accounts, rendered behind the backs of the parties in interest, as conclusive upon their rights.

The real purposes of these annual accountings, in the contemplation of the Legislature, were these: 1. To keep the probate court advised at short intervals of the proceedings of its subordinate officer, the executor; 2. To communicate in like manner, to all interested, information of the situation of the estate and the progress of the administration; 3. To serve as secondary evidence to the executor in the event of the loss of vouchers or the death of witnesses. These purposes are all effected by simply receiving the accounts as *prima facie* evidence; and there can be no necessity of going the extravagant length of holding the accounts as conclusively true.

Our law has carefully required that prior to the final settlement notice shall be given to the parties in interest. The inference is irresistible from this circumstance that the Legislature contemplated an effect of this settlement different from that of the previous ones. The latter were partial accounts rendered for information, the former a complete ac-

count submitted to trial and adjudication. By reference to the authorities, it will be seen that the views above expressed as to the effect of the *ex parte* settlements are abundantly sustained.

In England it has always been held, that a final account regularly taken before the ordinary, discharged the executor forever, and no further suit could be brought in any court for an account. But to have this effect, it was indispensable that the parties in interest should be cited to be present at the account. Without such citation the account had no effect whatever as to legatees and distributees, and they were at liberty to call the executor again to account in rendering which the previous *ex parte.* account was not admissible in evidence against them. (4 Burns' Eccl. Law, 603; Toll. Ex. 494; 2 Wms., Ex'r; Young v. Shelton, 3 Hagg. Eccl. R. 782 ; Anderson v. Fox, 2 Hen. & Munf. 245.)

The rule thus established, has been recognized in all succeeding cases in Virginia. (Mountjoy v. Lowry, 4 Hen. & Munf. 428; Cavendish v. Fleming, 3 Munf. 198; Shearman v. Christian, 9 Leigh, 577 ; Newton v. Poole, 12 Leigh, 112; 2 Lom. Ex. 807.)

In pursuing the inquiry into cases decided in the other States, it will be found that the stream of authority runs all one way. (Scott v. Fox, 14 Md. 397 ; Mitchell v. Mitchell, 3 Md. Ch. Dec. 74; Turney v. Williams, 7 Yerg. 172; Elrod v. Cancaster, 2 Head, 572 ; Cunningham v. Pool, 9 Ala. 619 ; Willis v. Willis, 9 Ala. 330; Smith v. Smith, 13 Ala. 335 ; Harper v. Archer, 9 Sm. & M. 75; Winborn v. King, 35 Miss. 158 ; Effinger v. Richards, 35 Miss. 540 ; Ingraham v. Rogers, 2 Texas, 467 ; Thomason v. Thomason, 1 Metcalf, Ky., 51 ; Allen v. Clark, 2 Blackf. 343 ; Ray v. Doughty, 4 Blackf. 115 ; Liddel v. McVicker, 6 Halst. 44 ; Livingstone v. Combs, Coxe, 42; Stearnes v. Stearnes, 1 Pick. 160 ; Stetson v. Bass, 9 Pick. 30 ; Allen v. Hubbard, 8 N. H. 487 ; Smith v. Dutton, 4 Shep. 311 ; Mass. Rev. Stat. 1836, p. 437 ; Wiggin v. Swett, 6 Metc. 198.)

It remains to consider the cases in our own reports that are thought by the other side to give countenance to the notion, that annual settlements are conclusive upon the rights of parties. An examination of these cases will dispel this delusion : Erwin v. Henry, 5 Mo. 470 ; Clark and wife, v. Henry, 9 Mo. 340; Caldwell v. Lockridge, 9 Mo. 362 ; Collins v. Stevenson, 12 Mo. 178 ; Stong v. Wilkson, 14 Mo. 116 ; Oldham v. Trimble, 15 Mo. 225 ; Jones v. Brinker, 20 Mo. 87 ; State, to use of, &c., v. Roland, 23 Mo. 95 ; Mitchell v. Williams, 27 Mo. 399.

*Krum & Decker*, for defendant in error.

I. The Circuit Court was authorized, under the statute as well as by general practice, to refer the matter of the executor's final settlement to a referee, and the referee was specially ordered to hear proof and allegations touching and concerning all the matters embraced in said settlement, and none other.

The authority for making this order is given by the 18th Sec. of 10th Art. Practice in Civil cases. (R. C. of 1855, p. 1262.)

II. Under the order of reference the referee could not, without disregarding the order, hear the proofs offered by appellant, for these proofs related altogether to different accounts from the one referred to him.

III. The annual settlements of the executor, which preceded the final settlement, had the force and effect of judgments, and it was not competent for the referee to go behind them.

Executors and administrators are by the laws of Missouri required to give public notice by publication of the grant of their letters, and they are also required to make annual settlements of their accounts. The matter of any estate is, therefore, a continuing and pending case in court from the date of the letters until it is disposed of by final settlement. Every person interested in the estate may be heard in the probate court, and will be presumed to be in court. The

statute requiring annual settlements to be made is a wise provision of law, and the decisions of the Supreme Court giving to such settlements the force and effect of judgments are equally wise.

Parties interested have ample opportunity to state their objections to any account, and it should be and is the policy of the law to require that this should be done during the term of courts at which the account is exhibited and settlement made.

If a party can stand by and not raise or state his objections to the annual settlements of an executor or administrator, as in this case, until after the lapse of ten years, and then come forward at the final settlement, and, without notice or specification, falsify and surcharge all the previous accounts and annual settlements, of what advantage is it to make such settlements? Shall a party in interest be allowed, notwithstanding he had full knowledge of the first annual accounting and settlement, to stand by, and, as it were, lay in ambush for a series of years, and wait until the witnesses by whom the administrator could have defended himself are dead, and then spring a mine at the final settlement, in the form of objections to the first settlement? This would be monstrous, and is certainly contrary to the spirit of our law and contrary to its administration.

The ground assumed by the appellant is, that it is only a final settlement that has the force and effect of a judgment.

The argument urged in support of this proposition when considered, it will be seen, is simply an ingenious fallacy. The basis of the argument rests in the assertion, that an executor is not required to give previous notice of his annual settlements.

On this assertion the whole argument of the appellant rests. Unfortunately for the appellant this fallacy is exposed, and his argument is overthrown by the statute law governing the case. The statute declares when and where the executor shall render his annual accounts. It is at the first term of the probate court after one year from the date of

his letters, and at the corresponding term of such court every year thereafter. (Art. V., Sec. 2, R. C. p. 159.) A public law designating the time and court, we submit, is quite sufficient notice to all parties concerned.

It is assumed also by the appellant, that the annual settlements of the executor were *ex parte* in their character, and therefore only *prima facie* correct. But this assumption rests on another, viz. : that the annual settlements of the executor were made without previous notice. The respondent denies that the annual settlements were made without previous notice, for the law itself gives notice. It is not pretended that these settlements were made out of time, or not in accordance with the statute. The argument based on the assumption that the annual settlements were *ex parte* in the sense conveyed by the appellant, is groundless and without force.

We conclude what we have to say under this head by restating our proposition, viz. : that the annual settlements of the executor have the force and effect of judgments, and they are conclusive as to all matters embraced in these settlements against all parties interested in the estate, except that said accounts may be surcharged and falsified by a proper proceeding in equity, alleging fraud or mistake. This proposition is fully sustained by repeated decisions of this court. (9 Mo. 363 ; 12 id. 178 ; 14 id. 116 ; 20 id. 87 ; 23 id. 95 ; 27 id. 399.) Nor do the adjudged cases cited on the other side militate against our position ; on the contrary, they sustain it.

It will be found on examination that all of the cases cited on the other side, other than those of our own court, were suits in equity to surcharge and falsify accounts and settlements, the very kind of proceeding that the appellant should have instituted in this case. It will be found too, on examination, that in the States where these cases occurred there existed no statute like ours, fixing the time when and where annual settlements must be made. Hence the settlements in these cases were literally *ex parte*.

BAY, Judge, delivered the opinion of the court.

In the early part of 1846, Ann Biddle died in the city of St. Louis, leaving a very large, estate which she disposed of by will. Louis G. Picot was appointed residuary legatee in trust for the infant children of Mrs. Harney, a sister of the testatrix, and John O'Fallon was made executor.

The executor accepted the appointment and entered upon the discharge of his duties, and made nine annual settlements with the probate court of St. Louis county, and gave the statutory notice that at the September term, 1856, of said court, he would present his accounts for a final settlement, which he did; and Picot, the residuary legatee, appeared and filed objections to his accounts, which objections had reference to matters embraced in the previous settlements. In this final settlement a balance was found against the executor of $13,482.07, from which settlement Picot appealed to the Circuit Court. The Circuit Court appointed a referee with instructions to examine into the settlement of 1856, *and no other*, thus precluding the referee from any inquiry or examination into any of the previous settlements. The order of reference in the form in which it was made was objected to, and a motion filed to set it aside, which being overruled the appellant duly excepted. On the hearing before the referee the appellant offered in evidence the nine annual settlements, and proposed to show that in such settlements there were mistakes in calculation, and omissions on the part of the executor to charge himself with property which came to his possession; also, that the executor had obtained exorbitant allowances and commissions; but the referee refused to hear the evidence, upon the ground that the order of the Circuit Court confined his examination to the last settlement. In due time the referee made his report, which the appellant moved to set aside. The court, however, overruled the motion and gave judgment upon the report; to all of which the appellant duly excepted, and now brings the case to this court by writ of error. The record presents but one

question for the consideration of this court, and that is, whether an annual settlement (preceding the final settlement of an executor or administrator) has the force and effect of a judgment, precluding any inquiry into its correctness on a final settlement. The question is by no means void of difficulty, and the authorities upon the subject, both in England and this country, fall short of any satisfactory solution thereof, because of the variance between our statute and the statutes of other States as well as England respecting the administration of estates.

Under our law, every executor and administrator is required to exhibit a statement of the accounts of his administration for settlement, with proper vouchers, to the county court (or probate court), at its first term after the end of one year from the date of his letters, and at the corresponding term of such court every year thereafter until the administration be completed; and if at any time he desires to make a final settlement, he shall publish for four weeks in some newspaper in this State, a notice to all creditors, and others interested in the estate, that he intends to make a final settlement at the next term of the court; and if it shall appear to the court that such notice has been duly published, and that the estate of the deceased has been fully administered, the court is required to make a final settlement, to be conducted as annual settlements.

No such notice nor any notice whatever is required in reference to the annual settlements, and such settlements therefore are *ex parte*, and very rarely made in the presence of an heir, legatee, or party interested. This distinction between an annual and final settlement must be kept in view, in order to see the application of authorities to the question under consideration.

In England, all matters of probate and administration are vested in the ecclesiastical courts, and the jurisdiction is exercised by the bishop through an inferior tribunal called ordinary. There is no specified time for a settlement of the accounts of the executor, but he is under the exclusive con-

trol of the ordinary, who can cite him to make a settlement whenever and as often as he thinks proper; and in 2 Wil·liams on Executors, 1777, it is stated that "the creditors and legatees, and all other parties having an interest, must be cited to be present at the making of the account, otherwise the account made in their absence will not bind them. Therefore the executor or administrator, when called upon by any one party to render an account, ought to cite the next of kin in special, and all others in general, having or pretending to have an interest in the goods of the deceased, to be present, if they think fit, at the rendering and passing of the account; and then on their appearance, or contumacy in not appearing, the judges shall proceed, and the account thus determined will be final."

And on page 1778 it is further stated, that, "after the investigation of the account, if the ordinary find it true and perfect, he shall pronounce for its validity; and in case all parties interested have been cited, such sentence shall be final, and the executor or administrator shall be subject to no further suit."

The English cases which undertake to interpret those statutes, seem to regard a settlement made without notice to the parties as purely *ex parte*, and subject to correction and revision by the ordinary, upon good cause shown by any heir or legatee.

In Virginia, probate matters fall within the jurisdiction of the county courts, and settlements with executors and administrators are usually made with a commissioner, or auditor, appointed for that purpose by the court; and it has been universally held in, that State, that such settlements are not conclusive upon the parties, but are merely *prima facie* evidence of the correctness of the charges and credits, subject to be surcharged and falsified by any person interested. (Newton v. Poole, 12 Leigh, 142.)

The counsel for the appellant has furnished in his brief several leading cases from the Alabama Reports which bear directly upon the question we are considering. In Cunning-

ham v. Poole, 9 Ala. 619, the Supreme Court says: "The mere fact that the guardian returned to the orphans' court from time to time a statement of the account between the ward and himself, the ordering of the same by the court to be recorded, and stating the balance upon the record according to the facts, is certainly not *res adjudicata*."

It does not preclude either party from showing an error in such returns, or estop the court when called upon to adjust the accounts upon final settlements, from examining all the matters of debit and credit from the time the guardianship commenced, and rendering such decree as may be proper upon a view of all the facts. And in Willis v. Willis, same Vol., p. 330, it is stated by the court, that "annual or partial settlements by an administrator or guardian are recognized by our laws, and may be absolutely necessary for the security of the administrator or guardian, as it would be most unreasonable that he should be required to keep an estate in his hands for many years without having his vouchers passed upon or his accounts settled. Such settlements when made according to law, are *prima facie* to be considered correct, but may be impeached by proof showing their incorrectness." And in Smith's heirs v. Smith's Adm'r, 13 Ala. 335, Collier, chief justice, in delivering the opinion of the court, says: "Partial settlements made by an administrator are not *res adjudicata;* either party may upon final settlement show an error in the accounts, and the court may examine all matters of debit and credit from the time the administration commenced, and render such decree as may be proper upon a view of all the facts."

The code of Alabama with reference to the administration law is, in its main features, similar to our own. It requires the administrator or executor to make annual settlements with the probate court; but he may make a final settlement at any time after eighteen months from the grant of letters, if the debts are all paid, and the condition of the estate in other respects will admit of it.

In New Jersey it has been held by the Supreme Court,

that "if by mistake, or other just and sufficient cause shown to the court, an omission has taken place in a partial account exhibited in the orphans' court by an administrator, such omission may be corrected, and just allowance be made to the administrator in his final account." (Liddell v. Mc-Vicker, 6 Halsted, 44.)

The Supreme Court of Texas ruled the same way in Ingraham v. Rogers, 2 Texas, 467. In speaking of the duties of the probate judge, they say : "If the judge discovered at any time before final settlement with the administratrix that an item had been allowed improperly, it was not only competent, but was his duty to make the correction. The allowance of the account was not *res adjudicata* until a final settlement."

The Supreme Court of Massachusetts, in several cases, held that a judge of probate had a right to open an account settled, for the purpose of correcting a mistake, and that such a right was necessary for the furtherance of justice, and ought not to be too strictly limited. (1 Pick. 157 ; 9 Pick. 30.)

From the language employed by the judges, it was not clear to what extent the account might be opened, whether simply for the correction of such errors and mistakes as were manifest upon the face of the settlements, or all errors that could be shown to exist, whether so manifest or not; and this no doubt led to the enactment by the Legislature of a statute which provides : "When an account is settled in the absence of any person adversely interested, and without notice to him, the account may be opened on the application of such person at any time within six months thereafter ; and upon every settlement of an account by an executor or administrator, all his former accounts may be so far opened as to correct any mistake or error therein, excepting that any matter in dispute between two parties which had been previously heard and determined by the court, shall not be again brought in question by either of the same parties without leave of the court." (R. S. Mass., 1836, p. 437.)

In Wiggins v. Swett, 6 Metc. 198, the court held that it was competent for the probate court to re-examine the former accounts rendered by an executrix, and make corrections therein by charging back sums which were therein credited to her, or in any other way diminishing allowances made to her therein. Shaw, chief justice, in delivering the opinion of the court, referred to the above recited provision of the Revised Statutes of 1836, but stated that the law was substantially the same before the revised statutes.

From these cases and others which have fallen under our notice, it is clear that the weight of judicial authority in other States, discountenances the idea that the annual settlement of an executor or administrator is conclusive, and has the force and effect of a judgment. But the learned counsel for the respondent has referred us to several cases decided in this State, which we will examine in the order stated in his brief. The first is that of Caldwell v. Lockridge, 9 Mo. 358. Caldwell, as administrator of one Lockridge, made, upon due notice given, a final settlement of his administration of the estate, which left the estate indebted in a small amount to him. At a subsequent day of the same term of the court, an order was made, without notice to Caldwell, disallowing certain commissions, the effect of which was to bring him in debt to the estate. The court held that it was not competent for the probate court to make such an order without notice to Caldwell, and Judge Scott, in delivering the opinion of the court, uses this language: " When an administrator makes his settlement, and a balance is found for or against him, that settlement has the force of a judgment." While this language is general, it is clear that the learned judge had reference to the final settlement, for no other settlement was in controversy; and in a subsequent opinion he says, " that though a court may have jurisdiction of a cause, yet a party not affected with notice of its proceedings is not bound by them."

The next case cited is that of Collins v. Stevenson, 12 Mo. 178, which was a suit on the official bond of the adminis-

tratrix, who had made her final settlement. Upon the trial, the court among others gave the following instruction: "That the record of the county court showing a final settlement of the estate of William Stevenson, deceased, by Margaret Stevenson, in the name of Margaret McGee, is *prima facie* evidence that the said estate is indebted to her in the sum of $4.81, and unless this is rebutted by the evidence of the plaintiff they will find for the defendants." The court held that the instruction was erroneous; that the administratrix having made a final settlement, the power of the court over her accounts ceased with that act. There is certainly nothing in this case which gives an annual settlement the binding force and effect of a final settlement, or militates against the distinction between an annual and final settlement, as contended for by the appellant.

The next case is that of Stong v. Wilkson, 14 Mo. 116. We are unable to find anything in this case which bears upon the point we are considering. The case is very imperfectly reported and if anything can be gathered from it, it is simply that a settlement made in the county court by an administrator, which is fraudulent in law, may be set aside by a Court of Chancery.

The next case is Jones v. Brinker, 20 Mo. 87. The suit was on the administration bond, and the petition alleged as breaches of the condition of the bond, that the administrator had obtained credit in his various settlements with the county court for illegal charges, specifying the settlements and the items of illegal charge, to which petition the defendants demurred, and the demurrer was sustained; and this court held that it was properly sustained, because the petition did not allege that the credit for illegal charges was obtained by fraudulent and false means and pretences. In delivering the opinion of the court, Judge Ryland, while speaking of the effect of allowances made to administrators by the county court in their annual and final settlements, says: "Those allowances and settlements have the effect of judgments, and are considered as conclusive be-

tween the parties interested and concerned therein at law. But it is allowed to a party interested to file his bill in chancery against the administrator, charging him with having made false and fraudulent accounts, and having fraudulently procured allowances in his favor to be made to him by the county court." The point invoked in the case at bar was not discussed or raised in this case. No attempt was made at a final settlement to correct mistakes in former settlements, but it was a suit on the administration bond, and the only question was as to the sufficiency of the petition—whether there was a sufficient allegation of the breach of the condition of the bond. A final settlement had been made, and as the annual settlements necessarily became merged in the final settlement, there could be no remedy but by a bill in chancery to surcharge and falsify. No question was made, as in this case, involving the distinction between an annual and final settlement; and the remark of the learned judge with respect to annual settlements was entirely outside of the case, and no authority is given in support of it.

The State, to the use of Tourville, v. Roland, is the next case cited by respondent, and between this and Jones v. Brinker there is scarcely a shade of difference. It was a suit on a guardian's bond against principal and security, in which plaintiff alleged as a breach of the condition of the bond, the failure of the guardian to rent out all the tenements and real estate of the relator, and his failure to account to the probate court, or to the relator himself, for certain rents alleged to be due for premises occupied by said guardian. The defendants set up in their answer the settlements made by the guardian with the probate court, showing that he had fully accounted for all the rents and profits of the real estate, which settlements the plaintiff offered to impeach; but the court rejected the evidence, and instructed the jury that the settlements of the guardian were conclusive in this action. This court sustained that view of the law, and stated in the opinion delivered, that the plaintiff should have filed his bill in chancery to set aside the settle-

ments before proceeding at law upon the bond. There is no analogy between the case and the one at bar.

The last case relied upon is Mitchell v. Williams, 27 Mo. 399. This was also a suit on a guardian's bond, and for breaches of the condition it was alleged that the guardian had fraudulently made false charges against the plaintiff, and fraudulently omitted to make proper charges against himself in his settlements with the county court. The defendant denied the allegation of fraud, and insisted that his settlements (among which was the final settlement) were conclusive on the plaintiff. The suit was commenced under the practice act of 1849, which required the court, when the case was tried without a jury, to make a finding of the facts. The court found that the settlements were not correct, that the defendant obtained allowances which he was not entitled to, and that he ought to be charged with items omitted in his settlements. Judgment being given for the plaintiff, the defendants appealed to this court. Judge Richardson, in delivering the opinion of the court, seemed to doubt whether it was a suit upon the bond, or a proceeding in chancery to set aside the allowances and settlements; but stated, that even if it was to be regarded as of the nature of an equity proceeding to set aside the settlements, still the judgment would have to be reversed, because the court below had omitted to find that said allowances and settlements had been procured by fraud. The analogy between this case and the one at bar is also not perceived.

It will be observed that in all the Missouri cases a final settlement had been made, and as the suits were actions at law upon official bonds the court could not treat the settlements otherwise than as conclusive upon the parties interested, and as having the force and effect of a judgment. The parties having neglected to appear at the final settlements, were necessarily remediless, except by bill in equity to surcharge and falsify. To this extent do the Missouri decisions go, and we think no farther. But the case at bar stands altogether upon a different footing. Here a party interested in the es-

tate as a residuary legatee, appears at the final settlement and suggests certain errors, mistakes and omissions in the previous settlements, and offers to make proof thereof, but is told that no inquiry or examination into such settlements can be made; and when he appeals to the Circuit Court, a referee is appointed to examine into the final settlement, and instructed not to examine into any other.

This, we think, was manifestly erroneous. Under our statute there is an obvious distinction between an annual and a final settlement. Of an annual settlement no notice is required to be given to the parties interested, and hence it becomes an *ex parte* proceeding; but a final settlement cannot be made without the publication for four weeks of a notice to the parties interested, that the administrator intends to make such a settlement at the next term of the court. Why notify a party to appear, if, when he does appear, his hands are to be tied and his mouth closed, and he is to be told that he has no right to question the accounts of the administrator as exhibited in the previous settlements? He may be able to show errors in addition, mistakes in calculations, and omissions to charge the administrator with money or property which may have come into his hands; yet he is denied the right of so doing, and told he must submit to all this unless he files a bill in chancery, and shows that such mistakes and omissions resulted from the fraudulent conduct of the administrator.

The probate judge himself, upon a final settlement, may, in reviewing the annual settlements, discover mistakes of his own, apparent upon the face of the settlement, in which the estate has suffered a loss of thousands of dollars; yet, according to the ruling of the court below, he can not correct them, and the loss must fall upon the heirs, who most frequently are women and minor children.

To this doctrine we cannot subscribe, and we feel confident that it cannot be maintained upon reason or authority. At the last or final settlement all parties interested are notified to appear, and generally do appear, if they desire to

know the manner in which the estate has been administered, and the occasion is one well adapted to the correction of mistakes, whether in favor of or against the administrator. By giving the probate court at such a time the power of correcting errors and supplying omissions, no injury can result to the executor, while it may be the means of protecting minors in the enjoyment of their patrimonial estates.

The other judges concurring, the judgment of the Circuit Court will be reversed, and the case remanded for further trial.