THE STATE OF MISSOURI, to use of ALFRED WAGENMANN, Respondent, *v.* CHARLES ROSSWAAG *et al.*, Appellants.

### July 10, 1876.

1. Where a guardian, after his ward becomes of age, makes a settlement with him concerning the ward's estate, which settlement shows an indebtedness of the guardian to the ward, and is filed in, and approved by, the Probate Court, such settlement is an admission of indebtedness on the part of the guardian, and is evidence, but not conclusive, against the guardian's sureties.

2. Where, in such case, the property of the ward is an individual interest in his father's estate, in which dower has not been assigned his mother, no abatement can be made from the rents of such estate on account of the dower, in a suit on a bond of the guardian to the use of the ward.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*F. & E. L. Gottschalk* and *Finkelnburg & Rassieur*, for appellants, cited : Wag. Stat. 538, secs. 48, 49 ; Co. Lit. 124 *b;* Laws N. J. 1709–1868 ; Nixon's Dig., 4th Am. ed., 250, secs. 1–3 ; Skouten *v.* Wood, 57 Mo. 382 ; McLaughlin *v.* McLaughlin, 12 N. J. Eq. 505–509 ; Perine's Exrs. *v.* Perine, 35 Ala. 644 ; Walker's Code Ala. 1867, p. 374, sec. 1630 ; Picot *v.* O'Fallon, 35 Mo. 29 ; Lewis *v.* Williams' Admr., 54 Mo. 200 ; Gamble *v.* Gibson, 59 Mo. 586 ; The State *ex rel. v.* Langford, 55 Mo. 564 ; Jones *v.* The State, 14 Ark. 170 ; 37 Penn. 60, 61 ; 1 Root, 51 ; 21 Ark. 447 ; 3 McCord, 237 ; 8 Ala. 781 ; 5 Binn. 184 ; 5 Mass. 7 ; 2 Hill, 313 ; 2 Blackf. 26.

*Slayback & Haeussler*, for respondent, cited : Glenn *v.* Fields, 53 Mo. 475 ; Haygood *v.* McKoon, 49 Mo. 78 ; Tourville *v.* Boland, 23 Mo. 95 ; Mitchell *v.* Williams, 27 Mo. 399 ; Finney *v.* The State to use, 9 Mo. 231.

GANTT, P. J., delivered the opinion of the court.

This was an action on the bond of Rosswaag as curator of Alfred Wagenmann, to whose use plaintiff sues. The petition alleged that Rosswaag was duly appointed curator of Alfred Wagenmann, and executed his bond with sureties,

etc., conditioned for the faithful performance of his duties as curator; that Alfred Wagenmann became of age, and Rosswaag made final settlement as guardian, by which it was found that $2,833.47 was due to his late ward, and on his refusal to pay this sum this suit was brought.

Rosswaag made default. The other defendants, who were his sureties, denied that Rosswaag made a final settlement, but admitted that he filed a memorandum in the Probate Court whereby it would appear that the sum claimed was due, but averred that this admission was made by a fraudulent combination between Rosswaag and his ward, for the purpose of defrauding the sureties, defendants; that Rosswaag was insolvent; and they prayed that the account might be opened and adjusted according to right and equity. The new matter in the answer was denied by a reply.

The cause was referred to a referee, who examined the account, took a mass of testimony, and ascertained a balance of $1,820.99 in favor of Alfred Wagenmann. The testimony was reported, exceptions were filed to the referee's report, and overruled, and judgment was given on the report. After saving all exceptions, defendants brought the case here by appeal. The suit was brought on March 20, 1874; was determined on January 18, 1875, in the Circuit Court at special term, and on April 2, 1875, by the court at general term.

The referee's report finds that Rosswaag was appointed curator of Alfred Wagenmann in the year 1861, when the latter was nine years old, and continued such curator until Wagenmann attained his majority; that in March, 1874, he made a final settlement of his accounts as such curator, whereby it appeared that he was chargeable with $2,833.47, which settlement was approved by the St. Louis Probate Court, and filed; that Rosswaag failed to pay this balance; that, in making up the account, Rosswaag, at the request of Wagenmann, charged himself with divers large sums of money which did not belong to the estate of Wagenmann,

and for which Rosswaag was not accountable as curator, but Rosswaag did not fail, in said settlement, to credit himself for all money wherefor he was entitled to credit against his ward; that said charges were not made fraudulently, but mistakenly; that the account should be opened as to the said sureties, and accordingly he states the account. In this he charges Rosswaag with the interest of Alfred Wagenmann in the rents of certain real estate belonging to Henry Wagenmann, his father. Rosswaag had administered on Henry Wagenmann's estate, and married his widow. He partially settled, as administrator, for these rents and profits, at the September term, 1866. From that time until March, 1874, the portion of said rents accruing to Alfred Wagenmann and received by Rosswaag, and not accounted for, was $1,013.90. The referee also found that Rosswaag had collected, between 1861 and 1866, certain rents of the same property, for which he had not accounted either as administrator or curator, the portion whereof accruing to Alfred was $320.66; that, when he made his final settlement as administrator, Rosswaag had in his hands two notes of Carl Hildebrand in favor of Henry Wagenmann, one dated April 17, 1858, for $500, and another for $75, both due in twelve months, with 10 per cent. interest; also one note of Adolph Hildebrand for $800, dated January 20, 1859, payable in twelve months, with 10 per cent. interest, and that Rosswaag charged himself with the principal of said notes; that he thereafter actually received, as interest thereon, the additional sum of $1,031.25, one-third of which accrued to Alfred Wagenmann, making $343.75 which has never been accounted for by Rosswaag. These sums — the sum of $135 taxes refunded by a lessee of the real estate, and $84.47 wherewith Rosswaag was chargeable as curator, as appears by an account filed March, 1863 — made up a sum of $1,820.99, for which the referee recommended that judgment should be given against him in favor of Alfred Wagenmann.

The referee further reported that Henry Wagenmann,

father of Alfred, had as his mansion-house No. 2406 Franklin avenue; that he left a widow and three children; that after his death the widow and children resided at this house; that, in 1861, she (the widow) married Rosswaag, and that she continued to live there after said marriage until the present time; that she has never had dower assigned to her in the estate of Henry Wagenmann; that the whole of the premises was not occupied by her, but she rented out parts of it both before and after her marriage, and Rosswaag, after the marriage, received large sums of money for the rent thereof, wherewith he charged himself in his final settlement as curator of Alfred; that Rosswaag was not accountable on his bond as curator for these rents, and that his charging himself therewith was a fraud in law on his sureties; that Rosswaag charged himself, in his final settlement with Alfred in 1874, with interest on Hildebrand's note, that accrued prior to September, 1866, and such charge was in like manner fraudulent as to his sureties.

The referee further reports that he made no abatement of the rents charged against Rosswaag on account of the dower of the widow, because that dower had not been assigned; also that in pursuit of equity he has omitted to charge Rosswaag with interest on the yearly rents, etc.; that Rosswaag is insolvent; that, in his settlements with Alfred and the other children of his wife (the three cases were consolidated and tried together), Rosswaag charged himself, or professed to charge himself, with all the rents received by him from the real estate of Henry Wagenmann, including the mansion-house, and that, deducting therefrom $818, for which he had accounted as administrator, he deducted from the remainder the sum of $3,406.33, being one-third thereof, as due to the widow of Henry Wagenmann as dowress, and also $1,900.29, for which he had accounted in his prior settlement as curator. But the referee saw fit to state the account as above shown.

To this report the sureties filed exceptions as follows:

1. Because the referee excluded proper, and admitted improper, evidence.

2. Because the referee refused to declare the legal propositions claimed by the sureties. ·

3. Because the referee did not allow dower to the widow.

4. Because of the allowance of anything on the notes of Hildebrand.

5. Because the referee erred in going behind and opening the settlements made by Rosswaag as administrator.

6. Because the referee erred in refusing to hear testimony relative to proper charges against plaintiff by his curator.

7. Because the finding of the referee is against law and evidence.

8. Because the referee erred in admitting the final settlement of Rosswaag as conclusive evidence.

We will consider these points in their order, taking as the specifications of the several heads of exception what was urged orally at the hearing, and what is stated in the printed and written arguments of appellants.

1. The averment of the admission of improper evidence is supposed to be established by the fact that the referee admitted the settlement made by Rosswaag in 1874, called a final settlement. Appellants contend that this paper was not admissible for any purpose, or to any degree, and they claim that the referee not only admitted it as evidence, but treated it as *conclusive*.

We do not think the referee treated this paper as conclusive evidence. He has certified to the contrary, and has liberated the sureties from several of the particular sums with which Rosswaag charged himself in making up the balance of $2,833.47. The disallowance of these sums charged against himself by Rosswaag in that settlement reduced the balance in Alfred Wagenmann's favor to $1,820.99, and for this sum, and interest, the Circuit Court gave judgment. Neither the referee nor the Circuit Court, then, treated this final settlement as conclusive. But the

objection of appellants is that it is not admissible for any purpose or in any degree, and in support of this assertion they cite *Picot* v. *O'Fallon*, 35 Mo. 29 ; *Folger* v. *Heidel*, 60 Mo. 284, and *State, to use of Thornton,* v. *Hoster,* not yet reported.

It may readily be admitted that the *administrator or guardian* cannot claim for his annual settlements any binding effect or validity ; and the reason is not far to seek. They are his own *ex parte* statements ; the other parties interested are not notified of them, and have no opportunity to challenge their correctness ; and hence they stand on a totally different ground from that occupied by a final settlement. *That* is made after the notice prescribed by law to distributees and creditors in the case of administration, and to the adult in the case of guardianship. If all the distributees and all the creditors were *sui juris*, and waived the formal notice prescribed by law in the case of administration, or if the adult waived it in case of guardianship, no reason is perceived why such a waiver would not be sufficient to dispense with the publication which the law requires, and stamps as constructive notice. The objection to the resort to such a waiver as a practical matter is well-nigh conclusive. It is almost impossible to prove that *every* creditor, to say nothing of every distributee, has united in the waiver ; and no man of ordinary prudence will, in the case of administration, omit the statutory notice which enables the Probate Court to make a judgment of binding force as against those who, but for this notice, would be no parties to it at all. This is the principle of the decision in the case of *Picot* v. *O'Fallon*, 35 Mo. 29, and also of *Folger* v. *Heidel*, 60 Mo. 284. In each case it was the administrator, or guardian, who invoked the aid of the annual settlement, and sought to make it conclusive ; and in each case this claim was very properly negatived.

As to the other case of *The State, to use of Thornton,* v. *Hoster,* not yet reported, we have seen a copy of the

opinion of the Supreme Court, and it does not touch the present inquiry. It only declares that the sureties of a guardian are not precluded from showing error in an annual settlement made by him. Nothing is more reasonable and just than this. Such a settlement is no more than an admission or statement made by the guardian ; it is no judgment at all ; and, to it the sureties and the ward being no parties, the one cannot be conclusively prejudiced, nor the other conclusively benefited, by what it says.

But no reason is perceived why, like any other admission or act of a party for whom sureties engage, it may not be evidence tending to prove the defalcation in respect of which sureties are responsible. The sureties of a guardian do not occupy different relations to their principal, or to those who are interested in the good conduct of their principal, from that which is occupied by other sureties towards their obligees. We know of no exception to the rule that admissions made by a principal, in the course of the business for his performance of which his sureties are liable, are binding on the surety. This point was ruled incidentally in the case of *Blair* v. *Perpetual Insurance Company*, 10 Mo. 559. But the rule itself was not questioned there by either party. The only dispute was as to whether the admission had been made in the course of the business for which the surety had undertaken, and the court decided that it had not been so made. We are, therefore, of opinion that as against the sureties of Rosswaag his admissions, oral or otherwise, made in the course of his business as guardian, were evidence, but not conclusive evidence ; and, the Circuit Court having so treated them, we see no error in this part of the record.

2. We pass over the general assignment of error contained in the second exception, and come,

3. To the exception which complains that the referee did not assign the widow's dower in this action. We are very clear that the referee was right in declining to do this.

The proper parties were not before him, nor was the form of the action appropriate for that purpose.

4. The reason assigned in support of the fourth exception appears to be that Rosswaag, by charging himself with the notes of Hildebrand as cash, and renewing them from time to time, was entitled to all the interest paid, and liable only for the principal to his wards. We can hardly suppose that this argument is seriously made.

5. We see no foundation for the fifth matter of exception. It seems that Rosswaag, being both administrator of Henry Wagenmann and curator of Alfred Wagenmann 'from 1861 to 1866, accounted, as administrator, for certain rents accruing before September, 1866, of the real estate which had belonged to Henry Wagenmann and had descended to his heirs; but for certain other rents of this real estate he did not account at all. The argument is that, having been discharged as administrator in respect of these rents, he is not chargeable for them as curator.

The law is that, as administrator, he had nothing to do with these rents, except so far as he was directed by the Probate Court, in view of the protection of the creditors of the estate, to take charge of the realty and appropriate its income. If, indeed, without this direction he should receive such rents, they would be assets in his hands, and he and his sureties would be accountable therefor, as we have more than once decided at the present term, following the rule laid down by the Supreme Court in the case of *Gamble* et al. v. *Gibson, Executor of Gamble*, 59 Mo. 585. It was natural that the accounts of Rosswaag, administrator of Wagenmann, should not show all the rents of his intestate's real estate; it would almost have been improper that these accounts should have shown such rents, the estate being perfectly solvent; and to permit the ward of Rosswaag, and child of intestate, to make Rosswaag accountable for rents received by him, presumably and properly, as curator, was not only regular and logical, but to have

refused it would have been scandalous. In doing this, the accounts of Rosswaag, administrator, were in no respect falsified.

6. We are referred to page 25 of the records to justify the sixth exception. We find nothing there to support the criticism.

7. The seventh and eighth points have already received consideration, and, as the result of the examination we have made, the judgment of the Circuit Court is affirmed, Judge LEWIS concurring. It is matter of regret that this opinion does not receive the concurrence of Judge BAKEWELL, who considers that in the case of *The State, to use of Thornton*, v. *Hoster*, decided by the Supreme Court in January last, but not yet reported, it was held that no action can be maintained by a ward against his guardian until the guardian has, with all the forms indicated in section 48 of chapter 116, General Statutes (1 Wag. Stat. 681, sec. 48), made a final settlement of his guardian account.

Of course, if we thought that the Supreme Court of Missouri had so ruled, we would have no option, and must administer the law as expounded by its ultimate interpreter. But we do not think that the Supreme Court has made any such ruling. All that we conceive that court to have decided in the case referred to is that, when confronted by any settlement short of a final settlement as defined in the 48th section above quoted, the sureties of a guardian are at liberty to show that it is erroneous, and that it cannot have any conclusive force as against them until they have had an opportunity of being heard to impeach it. This is all which we understand the Supreme Court to have said in that case. Such a ruling as that which is by the dissenting judge supposed to have been made by that high court could hardly fail to work enormous inconvenience in practice, and to delay, without any compensating advantage, the attainment of plain justice. The office of an executor or administrator continues until, being a female, she marries, when her powers

cease (Gen. Stat., ch. 120, sec. 34), or until, being male or
female, death occurs; or until he or she is removed for
delinquency (Gen. Stat., ch. 129, sec. 35), or is permitted to
resign.    Gen. Stat., ch. 120, secs. 43, 44.    In any of these
cases nothing hinders the appointment of an administrator *de
bonis non.*    But when his ward arrives at full age, or, being
a female, contracts marriage, the office of guardian is, *ipso
facto*, determined.    Gen. Stat., ch. 116, sec. 48.    True, he is
liable, after the determination, to settle the account between
himself and his late ward; but, if he is in contempt, or if he
leave the State, the practical difficulty of obtaining a *final
settlement* may be insuperable, and to suspend all remedy
against the sureties until this final settlement is had may be
equivalent to denying all remedy.    The condition of the
bond of a guardian being "for the faithful performance of
his duties according to law" (Gen. Stat., ch. 116, sec. 22) —
and for the breach of this condition the sureties would seem
to be liable in every case — a breach would occur whenever
the guardian failed to account; but the *quantum* of damages
would depend upon what the account, when stated, would
show, and thus it seems to follow, irresistibly, that any court
having jurisdiction of an action on the bond must have
jurisdiction to ascertain the state of the account.

For the reasons above shown, the judgment of the Circuit
Court is, with the concurrence of Judge Lewis, affirmed;
Judge Bakewell dissenting.