CHARLES E. MUSICK, *et al.*, v. JEROME BEEBE, *as Adm'r, &c.*

1. ADMINISTRATORS' SETTLEMENTS; *Annual and Final.* While all settlements of estates by administrators are in a certain sense judicial determinations, yet there is a broad distinction between annual and final settlements. The one is wholly *ex parte*, and without notice; the other can be made only upon due publication of notice to creditors and all persons interested. The one is made annually, or oftener at the pleasure of the court; the other, only when the estate is fully administered. The one is for the information of the court and the convenience of the administrator in the management of the estate; the other for the protection of the administrator, and is a final adjudication of the respective rights and obligations of administrator, creditors and heirs. The one is only *prima facie* correct, and is subject to correction of any errors or mistakes thereafter discovered in it, with appeal, or any direct proceeding to review it or set it aside. The other is conclusive and final, unless set aside by appeal or direct proceeding therefor, or impeached for fraud. The one is, so to speak, a judgment *de bene esse*, the other a final judgment.

2. ―――― *Revocation of Letters of Administration.* A settlement may be final as to an administrator, as when his letters are revoked, without being technically a final settlement.

3. ―――― On an examination of the record of the probate court in this case, and giving to the entries and proceedings a fair and reasonable construction, it is held, that the so-called final settlement was intended as a settlement final only as to the administrator whose letters were revoked, and was intended to be and was in fact only an annual settlement as to the intestate's estate.

4. LIABILITY OF SURETIES, *on Administrator's Bond.* Where an administrator is appointed, gives bond, and takes possession of all the property of the decedent, inventories and sells it as the individual property of the decedent, and receives the proceeds thereof, the sureties cannot thereafter defend an action against him and them for a part of such proceeds upon the grounds that, as to a part of this property, a third party had before the decedent's death purchased an interest as partner, giving therefor his notes secured by chattel mortgage on the interest so purchased, and good because so secured, and which notes still remain the property of the decedent, when it appears that such partner had, prior to any appointment, refused to take charge of and settle the partnership business, and had subsequent to the appointment relinquished all interest therein by agreement with the administrator, and for a consideration rendering worthless the notes, and when the amount not accounted for and paid over by

the administrator and for which the action is brought, is less than one-half the value of the notes rendered worthless by such agreement and relinquishment.

5. ———— Where an administrator sells and delivers to a purchaser personal property of the estate, and receives in payment therefor part cash and part a note of the purchaser, and the probate court afterward makes an order setting aside such sale, but the possession of the purchaser is never interfered with, nor the property returned to the estate, nor the cash or note returned to the purchaser, nor the sale in fact disturbed; and where the administrator *de bonis non* subsequently sues and collects said note from said purchaser, *held*, that the administrator should pay the cash received on such sale to his successor in office; and on his failure so to do, an action can be maintained against him and the sureties on his bond therefor.

### *Error from Leavenworth District Court.*

JOHN BRENNAN died intestate, at the county of Ellsworth, May 26th 1868. On the 22d of August, Noah Newbanks was appointed administrator of Brennan's estate, and gave a bond as such administrator, in the sum of $30,000, with *Charles E. Musick, Evander Light,* Philetus M. Thompson, and W. H. Weed as sureties. Newbanks acted as such administrator, until the 24th of July 1869, when his letters of administration were revoked by the probate court of Ellsworth county. In October 1869, Miles Brennan was appointed administrator *de bonis non* of said estate, but his letters of administration were revoked in November following. The estate being still unsettled, said probate court afterward, and on the 23d of said November, duly appointed *Jerome Beebee,* as administrator *de bonis non.* In February 1872, *Beebee,* as such administrator, brought this action, in the district court of Leavenworth county, against Newbanks and his sureties, on the administration bond of 22d August 1868, to recover $35,000 alleged to be due to said Brennan's estate from Newbanks for moneys and property received by him and unaccounted for. Service of summons was made on *Musick* and *Light,* who appeared and answered. Newbanks voluntarily appeared and filed a separate answer. No service upon and no appearance by the other sureties. The action

was tried at the September Term 1873. The jury returned a special finding of fact, upon which the court gave judgment in favor of the plaintiff, and against Newbanks, *Musick* and *Light,* for $4,237.36, and costs. Defendants *Musick* and *Light* bring the case here on error. The opinion contains a sufficient statement of the facts and proceedings.

*Stillings & Fenlon,* for plaintiffs in error.

*B. Gray,* and *English & English,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought in the district court of Leavenworth county by the administrator *de bonis non* of the estate of John Brennan, deceased, against Noah Newbanks, a former administrator of the same estate, and the sureties on his official bond, to recover assets in his hands belonging to the estate and not paid over to his successor. The case was tried before a jury, who returned a special verdict. Upon this, judgment was rendered in favor of the administrator *de bonis non* for $4,237.36, to reverse which this proceeding in error has been instituted. The evidence was not preserved, so that the case stands before us upon the pleadings and the special verdict. Upon these, is any error apparent in the judgment? The amount of the judgment is made up of four items: 1st, $566.56, the value of the use of the property belonging to the estate used by the administrator for his personal benefit; 2d, $2,000, cash paid to the administrator on a sale made by him; 3d, $605.80, interest on the above amounts; and 4th, $1,065, the value of personal property converted by him to his own use. That as general propositions, an administrator is chargeable with the value of the use of property belonging to the estate, used by him for his personal benefit, with money received by him on the sale of property of the estate, and with the value of such property converted to his own use, and that an administrator *de bonis non* may recover therefor against the administrator and his sureties, will not be questioned. (Gen. Stat., p. 435, § 26.)

So that upon these findings alone, the judgment would unquestionably be correct. We must look therefore to the defense, and see what facts are shown to avoid such liability. And there are three matters of defense: 1st, that there was a final settlement of the estate made by the administrator, and approved by the probate court, by which the estate was found to be in debt to the administrator, and that therefore this matter is *res judicata ;* 2d, that the property which passed into the hands of the administrator was the partnership property of the firm of Brennan & Atkins, and that therefore the sureties on the bond of the administrator of the individual estate of Brennan are not liable; and 3d, that as to the $2,000, the sale under which it was received was set aside by the probate court. Of these in their order.

Was there a valid final settlement? Administration on the estate was had in Ellsworth county. A copy of the records of the probate and district courts of that county, affecting this estate, is made a part of the special verdict, and to that must we look for an answer to the question. It appears from that, that on August 18th 1868, Newbanks was appointed administrator, and on the 22d his bond, with Musick and Light as sureties, was approved. On the 22d of May 1869, at the close of an order setting aside a sale of personal property, is an order in these words: "It is further adjudged that if sufficient security be given, that the administrator, at the expiration of one year from the date of his letters of administration, turn over all the assets of the estate to the next of kin of the deceased, and make a full statement thereof." On the 27th of May, on application of his sureties, the administrator was ordered to "file additional security within ten days." This order does not appear to have been complied with. On June 14th, this order was entered: "It is ordered by the court, that Noah Newbanks, administrator, be required to turn all books and papers and money belonging to the estate of John Brennan deceased, to Miles Brennan, heir-at-law of said estate, by the 1st day of July 1869." On July 9th is this entry: "In compliance with an order of

the court dated June 14th 1869, Noah Newbanks, adminis-
trator of John .Brennan deceased, comes into court to make
final settlement, presented the following bills for allowance."
Then follows a long list of claims, which seem to have been
presented upon several succeeding days, amounting in the
aggregate to $12,252.61, and at the close are these words:
"July 24th 1869, the above accounts credited to Noah New-
banks, administrator of John Brennan deceased." On July
23d is filed what is called "an inventory of property sold,"
but which includes money received from other sources than
sales, and amounting to $11,834.21. On July 24th is this
entry: "The letters of administration of Noah Newbanks
of the estate of John Brennan deceased are hereby revoked."
Then, on July 25th, appears this entry: "It appearing to the
court upon final settlement of Noah Newbanks, administra-
tor of John Brennan deceased, that the said administrator
has properly disposed of the· personal property of the said
estate, and has received as assets of the same, from various
sources, to the value and amount of $11,834.21, and has paid
and distributed claims and expenses of the same in the amount
of $12,260, and that there is now in his hands and unadminis-
tered the following personal property belonging to the said
estate, to-wit, 87 mules, * * * it is therefore ordered and
adjudged, that the said Noah Newbanks turn over and deliver to
the said Wm. Brennan, heir-at-law and next of kin to the said
John Brennan deceased, the said property aforesaid." Then
follows, of same date, a bond by Wm. Brennan, with sureties,
approved on same day by probate judge, and which recites
among other things, that, "whereas the letters of administra-
tion aforesaid have been revoked by said court, leaving a part
of said estate unadministered, and whereas the said Wm.
Brennan has asked for and obtained an order from said court
for the said estate unadministered to be turned over to him
as the heir-at-law as aforesaid, now therefore, if the said Wm.
Brennan shall well and truly pay or cause to be paid all legal
claims that are due from and unpaid by said estate, of any
nature or character whatever, then this obligation to be void."

Then appear notices of appeal both by the administrator and
Wm. Brennan, the former appealing from the disallowance
of two small claims amounting to $283.66, and the order to
turn over the personal property, and the latter from the al-
lowance of some eleven items included in the administrator's
statement, and amounting to $3,320.19. The notices of ap-
peal did not on either side indicate an appeal from the entire
settlement, but only from those matters specifically named as
above stated. Thereafter was filed in the probate court a
transcript of the proceedings in the district court, which re-
cited the appearance of both parties therein, and an adjudica-
tion affirming the disallowance of the $283.66, and disallowing
the $3,320.19. No order seems to have been entered by the
probate court upon its records on the filing of this transcript.
On November 23d 1869, the defendant in error was ap-
pointed administrator *de bonis non*. An order was also
entered directing Newbanks to turn over the money, papers
and other valuable property to the administrator *de bonis non*.
It also appears there were debts due by the estate at the time
of the settlement. No notice of final settlement, or any proof
of publication of one, or any finding or reference by the court
to one, can be found. To the transcript is attached a certifi-
cate of the judge, that the same is a "full, true, perfect and
complete transcript of all the pleadings and proceedings,
records and papers, filed and had in said court in and about
the matter of the administration of the estate of John Bren-
nan, deceased." To this let it be added, that during the few
months of these proceedings, four gentlemen held in succes-
sion the office of probate judge, and that the transcript dis-
closes a gross disregard of the requirements of law in the
management of the estate, and in the record or proceedings, or
both, and we are in a position to determine the validity and
effect of the so-called "final settlement." That settlements
of administrators, approved by probate courts, are in the
nature of judicial determinations, and binding upon the estate,
has been decided. *Shoemaker v. Brown*, 10 Kas., 393. So that
this settlement, however irregularly entered, is an adjudica-

tion against the estate, and all who represent it, or claim from it, as to all matters actually or by necessary implication covered by its terms. But there is a great difference between ordinary annual settlements, and what is technically known as a final settlement. The former is simply a statement of the administrator, that he has received such amounts, and paid out such; and the approval finds that statement to be true. It is therefore in the nature of an adjudication, a judicial determination. But it is, so to speak, only a present adjudication, and *prima facie* correct—one made for the purpose of enabling the court to keep watch of the estate, and to control the disposition of its assets, and the payment of its debts. Unquestioned, it is accepted as an adjudication, and made the basis and starting point of further administration. But it may be challenged without appeal, and in the same court, and without motion for re-hearing, or any direct proceedings to set it aside; and any errors or mistakes in it may be corrected at any subsequent settlement. Gen. Stat., 462, § 158. These accounts are settled *ex parte*, and without even the pretense of notice by publication or otherwise to any parties interested. But the final settlement of an estate is a more stringent and less easily avoided adjudication. It is more emphatically a judgment. True, it may by the probate court be opened up, and the administration continued; but this requires a direct proceeding therefor. While generally *ex parte*, yet it can only be made upon notice. Gen. Stat., 461, §§ 150, 151; *Winborn v. King*, 35 Miss., 157; *Revis v. Patty*, 43 Miss., 343. The idea is, that it is that adjudication of the management of the estate, to which all interested are directly summoned, and by which all having a day in court are concluded. It is a direct adjudication that the estate is fully administered, and that means either that all the debts are paid, or that all the assets are exhausted. It implies that the administrator has received not merely all the money he admits in his statement, but also no more. In other words, that he has fully accounted for all that he has received, or ought to have received, and that, so far as it was sufficient, he has used it in the discharge of the

debts. See upon this question, as pointing out distinctly the difference between an annual and final settlement, *Winborn v. King*, 35 Miss. 157; *Bronson v. Ward*, 3 Paige, 189, and especially *Picot v. Riddles, Adm'r*, 35 Mo. 39. This case has a full discussion of the question, and a citation and review of the authorities, and its conclusions are in accord with the views herein expressed. There may be a settlement which is, so to speak, final as to the administrator, without being strictly a final settlement. Thus, if for any reason an administrator's letters are revoked, and administration intrusted to an administrator *de bonis non*, the settlement made by such administrator at the time of the revocation is final as to him, but is not technically a final settlement. It is no more than an ordinary settlement. And that, it seems to us, must be the fact concerning the so-called final settlement in this case. We do not rest this conclusion upon any mere technical omission, for the orders and proceedings of probate courts are to receive a reasonable construction. We must endeavor to ascertain what was intended, and not by imposing a technical meaning on terms attempt to force a construction not designed. But no notice of a final settlement appears to have been given. Perhaps the evidence of the record does not prove that there was no notice. Perhaps the presumption would be, that all things necessary to confer jurisdiction were regularly done. That is a question of law, into which we do not care to enter. It is a question of construction, and not one of law, we are now considering. And in this direction, the fact that no notice appears, and that there is no reference to it in any form, strongly tends to show that none in fact was given. Again, the prior orders tend to show that no final settlement of the estate was intended. On the 27th of May the administrator is ordered to give additional security in ten days; on June 14th, to turn over all papers, books and money to the heir by the 1st of July. And in compliance with this last order it is said, on July 9th, that he comes into court to make final settlement. As four weeks' publication is required of a notice of final settlement, it is evident that the order on June 14th,

to turn over the property to the heir by the 1st of July, did not contemplate a final settlement. Again, on the 24th of July the letters of the administrator are revoked—an order wholly inconsistent with the idea of a final settlement. And again, in the order of the succeeding day, the so-called order of final settlement, it is specifically found that the estate is not wholly administered, and the court can only make a final settlement when it appears that the estate "has been fully administered." Gen. Stat. 461, § 151. And in the bond executed before and approved by the probate judge on the same day, the heir bound himself to pay the debts. All these things together indicate to us that the court, although in its order it uses the words "final settlement," was not intending to make the technical final settlement of the estate, but was intending to turn the estate over to the heir for him to settle. Whether such proceedings were regular or not, it is unnecessary to decide. It is enough to show that such seems to have been their purpose and scope. Again, in this order of July 25th, it is found that certain property remains unadministered, and the administrator is ordered to turn it over to the heir. As we shall see, the major portion of the judgment in the case at bar is founded upon the dealings of the administrator with this property, so that it is to that extent rather in accord than in disregard of the settlement. Still again, while there may have been irregularity in the taking of the appeals, yet both the administrator and the heir appeared in the district court, and submitted to its jurisdiction. And by its decision a large amount allowed to the administrator by the probate court was disallowed, and thus the administrator is left several thousands of dollars in debt to the estate. It does not seem to us therefore, that there is enough in this so-called final settlement to bar this action, or compel a reversal of the judgment.

A second objection is, that the property belonged to the partnership of Brennan & Atkins, and that therefore the sureties on the bond of the administrator of the individual

estate of Brennan were not responsible. The facts are these:

*4. Liability of sureties in administrator's bond.* Prior to his death, Brennan was a freighter, and owned a train. He sold a half-interest to Atkins for $9,800, and took five notes therefor, secured by chattel mortgage on the interest sold. These notes were unpaid except as to $89.31, and were good because so secured. After Newbanks became administrator, Atkins relinquished his interest in the train for the sum of $2,978.47 allowed him by the probate court, and the notes then became worthless. Newbanks, as administrator, inventoried the property as the property of the estate, had the exclusive control and possession of it until sold by him. In addition, the inventory shows more property than the jury find Atkins purchased any interest in; and indeed, there is nothing in it in any manner tending to show that Atkins had any interest in any of the property. So that it appears, that by means of this bond the administrator got possession of this property, treated it as the property of the estate, bought in the only outstanding interest in it, sold it as the property of the estate, used part of the proceeds in the payment of debts, and keeps the balance in his pocket. More than that, the amount now in dispute, and not paid over by the administrator, is less than one-half the value of the notes rendered worthless by this settlement with Atkins, and which unquestionably belonged to the individual estate, and were covered by the bond. We think it too late now for the sureties to interpose this objection.

Finally, it is objected that the sale under which the $2,000 was received was set aside by the probate court. Here the facts are these: Newbanks, on November 14th 1868, sold certain property to Musick, one of his sureties, for $6,293.40, receiving $2,000 in cash and the balance in a note. On May 23d 1869, the court made an order setting aside the sale, and in the order of July 25th 1869 it finds that the property so sold is in his possession, and orders him to turn it over to the heir. As a matter of fact, he did not have the possession of

the property, but did have the note and the cash. The latter he still holds, and has never paid to anybody. The note he surrendered to Miles Brennan, appointed first administrator *de bonis non*, under a stipulation that he would not enforce against said Musick the order setting aside the sale, a similar stipulation being also signed by the heir. Suit was afterward brought on the note by the present defendant in error, as administrator *de bonis non*, judgment rendered thereon against the purchaser, and by him paid. We see nothing in this to discharge the administrator or his sureties. He made a sale, which in fact has never been disturbed. He surrendered to the purchaser certain property of the estate, which has never been returned to it, and which the purchaser still holds or enjoys the benefit of. He received for such property, so lost to the estate, cash and securities. The latter he surrendered to his successor, and by him they have been enforced against the purchaser, thus practically ratifying the sale. The cash still remains in his hands. It belongs to the estate, and should be transferred to its representative.

We have thus noticed the objections to the judgment, and are of the opinion that none should prevail. We have been much embarrassed in the examination of this record by the fact heretofore noticed, of the defects, omissions and irregularities in the record of the proceedings of the probate court. We are still in great doubt as to the scope and purpose of many of the orders and entries in that record, and can only say in conclusion, that we have not been satisfied that there is anything in the record which shows that the jury erred in finding the amount which they did to be due from the plaintiffs in error.

The judgment will be affirmed.

All the Justices concurring.