IN RE ASTIBIA'S ESTATE. ETCHEPARE, ADMINISTRATOR, APPELLANT, v. ASTIBIA ET AL., RESPONDENTS.

(No. 7,407.)

(Submitted June 8, 1935. Decided June 20, 1935.)

[46 Pac. (2d) 712.]

*Mr. Thomas Dignan, Mr. J. O. Weaver* and *Mr. Otis A. Hallett,* for Appellant, submitted a brief; *Mr. Hallett* argued the cause orally.

228

*Mr. C. H. Roberts* and *Mr. James T. Shea*, for Respondents, submitted a brief; *Mr. Shea* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal of John Etchepare, administrator, from an order and judgment disallowing certain items of credit claimed in his final account, removing him as administrator and directing him to pay over to the estate certain sums of money.

One Juan Astibia died intestate in Valley county on May 30, 1929, leaving an estate consisting solely of personal property, his sole heir being his father, Rafael Astibia, who resided in Spain. On the written request of the heir, John Etchepare was appointed administrator and duly qualified in September, 1929. Inventory and appraisement were duly made and filed, showing the following property received by the administrator:

| | |
|---|---:|
| Cash on hand | $ .17 |
| 505 Head of ewes ages 1, 2, 3 years, $10 each | 5,050.00 |
| 136 Head of ewes, ages 4, 5 & 6 years, $6 each | 810.00 |
| 5 Wethers worth $5 each | 25.00 |
| 8 Bucks worth $25 each | 200.00 |
| 376 Head of lambs worth $6 each | 2,256.00 |
| 1 Sheep wagon and camp equipment | 250.00 |
| 1 Saddle | 30.00 |
| 1 Team of horses | 50.00 |
| 1 Set of harness | 30.00 |
| 1 Watch | 5.00 |
| A note dated March 1, 1929, due July 1, 1929, signed by Frank Miller | 35.00 |
| Total | $8,741.17. |

Notice to creditors was given and thereafter the administrator petitioned the court for an order to sell all or part of the property. A hearing was had, and on October 17, 1929, the court ordered the sale of all of the property of the estate except the watch and note "at private sale for cash."

On December 23, 1930, the administrator filed with the court a "return of sale of property and petition for confirmation of same," wherein he showed to the court that on October 28, 1929, he made a shipment of sheep to Chicago, from which he sold, in Wisconsin, 10 ewes for $79 and 5 ewes for $50, receiving a

total of $120, and sold in Chicago, through Boles Commission Company, ''236 sheep as follows:

```
171 Feeders, weight 9,510 lbs. at 12.85........... $1,222.03
Nov. 2 6 Cull lambs weight 230 lbs. at 10.50..... 24.15
27 Ewes weight 2,340 lbs. at 7.00................ 163.80
1 Wether weight 80 lbs. at 7.00................. 5.60
2 Wethers weight 290 lbs. at 7.00............... 17.40
10 Ewes, weight 830 lbs. at 7.00................ 41.50
19 Cull ewes, weight 1570, at 3.00.............. 47.10
 _____
 $1,521.58
(Expenses) .................................. 294.63 $1,226.95.''
"1929. June 27 Received from Art Jurgens for wool from
 sheep in his possession.................$ 440.90
 Sept. 16 Wool * * * from Sheep run by Mar-
 tin Risa on half share basis * * *
 (less expense) ...................... 208.47
 Nov. 13 104 lambs * * * .................... 348.00
 Nov. 24 41 lambs * * * .................... 176.73
 Dec. 18 240 ewes at 4.00...................... 960.00
 * * * wool from sheep run by Mike
 Sholtus on half shares................ 74.00
 _____
 $3,564.05.''
```

To this report is attached a ''note'' as follows: ''In the fall of 1929 certain sheep were contracted to be sold to Art Jurgens, but thus far he has not been able to pay for same and thereby close the deal. In the event he is able to pay the $440.90 at item 3 of above shall be credited on the purchase price of said sheep.'' After hearing, the sales reported were ''confirmed, approved and declared valid.''

The account of the sale is the only report or account of any kind made to the court by the administrator from the time of his appointment up to the fall of 1933. From July, 1930, to May, 1931, the heir in Spain wrote the administrator five letters, which he sent by registered mail asking for information concerning the condition of the estate. From his letter of May 17, 1931, it appears that he had then received a letter from the administrator inclosing $100, with the promise of $200 later in the year. The administrator had not filed with the court, or exhibited to the court, his receipts and disbursements and claims allowed as required by section 10288 of the Revised Codes of 1921; nor had he secured from the court any order for a partial distribution of the assets of the estate.

On August 3, 1933, a petition praying for an accounting and for the suspension and removal of the administrator, signed "Rafael Astibia, Petitioner, by C. H. Roberts and J. T. Shea, Attorneys for Petitioner and for the Attorney in Fact of said Petitioner," was filed. Thereupon the court issued an order to show cause why the relief prayed for should not be granted, and thereafter the administrator filed his "First and Final Account and Report * * * return of sale of personal property, petition for the confirmation thereof," and for the allowance of attorney's fees, administrator's fees, and the fixing of inheritance tax. Counsel who filed the petition in response to which this accounting was filed, filed numerous objections to the account, and thereafter counsel for the administrator served upon these attorneys and filed notice of motion demanding that they show their authority to act for the heir.

All of these matters came on for hearing on February 26, 1934, and evidence, both oral and documentary, was introduced in support of the respective contentions of the parties; briefs were filed and in due time the court made findings in favor of the heir and against the administrator on certain of the contested items in the account, and entered its judgment and decree removing the administrator and appointing John M. Kline in his stead. The judgment orders that Etchepare shall, upon Kline's qualifying, deliver to the latter all moneys, goods, chattels, and papers belonging to the estate, "and specifically" the sum of $3,845.49, with interest at 6 per cent. per annum from the date of judgment. The appeal is from this judgment.

The appellant makes twenty-four specifications of error which raise the questions hereinafter considered.

At the opening of the hearing, counsel for the administrator sought to prove certain facts and customs in Spain with reference to the use of names and thereby cast doubt upon the record showing opposing counsel's authority to appear for Rafael Astibia, father of deceased. This proof was objected to on the ground that the challenge came too late in view of the record and several stipulations between counsel for continuances of the hearing. The court excluded the oral evidence offered and,

on the record, overruled the motion to require proof of authority and permitted counsel to proceed with the hearing. Error is assigned on this ruling, on the assertion that the record does not show that opposing counsel's client is in fact Rafael Astibia admittedly the father of deceased.

It is elementary that only parties interested in the estate could have any right to object to the report of the administrator. (*In re McLure's Estate,* 68 Mont. 556, 220 Pac. 527.) The court or judge, on motion of either party, may require the attorney of the adverse party to produce and prove the authority under which he appears, and may at any time summarily relieve a party from the consequence of the acts of an unauthorized party. (Sec. 8994, Rev. Codes 1921.) "The statute does not declare when the motion should be made. It would seem, however, that it should be made whenever during the progress of the case the party desiring to present the question comes into the possession of facts furnishing a reasonable ground for the belief that the adversary attorney is acting without authority. It would seem, also, most appropriate that the defendant, if he desires to do so, should make his motion upon his first appearance in the action. In any event his motion should be made at the earliest time he can make it. Otherwise, he may be deemed to have waived his right to move at all." (*Missoula Belt Line Ry. Co.* v. *Smith,* 58 Mont. 432, 193 Pac. 529, 531.)

Here, the proceedings heard were instituted by the filing of the heirs' petition on August 3, 1933. Therein the administrator is "the defendant," and he made his "first appearance" when he filed his report in the latter part of August. He thereafter filed the amended report on which the hearing was had, on February 4, 1934, and did not file his notice of motion and motion to require this proof until February 15, 1934; he made no showing as to when the facts on which he based his motion first came to his knowledge, and it would seem that he waived his right to challenge the authority of opposing counsel. However, the record sufficiently establishes the authority of the challenged attorneys; as shown by the administrator's offer of proof, the challenge has to do only with the use of a name other than that

of the heir, and an attempt to show that, by custom, this name would indicate that the objector was the son of Rafael Astibia rather than the man himself.

Opposing counsel's appointment and authority came from the ▮ Consul General of Spain, in San Francisco, whose authority rests upon a written power of attorney on file herein which is signed, "Rafael A. Zabaleta," but which instrument recites, "I, Rafael Zabaleta, a resident of Leitz, Navarra, Spain, also known as Rafael Astibia, and being the same person who under the name of Rafael Astibia heretofore petitioned for the appointment of John Etchepare * * * to be appointed administrator of the estate of my deceased son, Juan Astibia, late of Valley county, Montana, whose true name in Spain was John Astivia Varricola, do hereby * * * appoint Alvaro y Gomez Acebo, Consul General of Spain * * * my true and lawful attorney * * * to enter my appearance * * * in any suit or proceeding in which he may deem it necessary * * * for the purpose of protecting my right as an heir at law of said deceased, Juan Astibia, who was my true and lawful son * * * either by himself or by such agents or attorneys as he may choose." The instrument is duly acknowledged (sec. 6908, Rev. Codes 1921) and the notary's authority duly certified by the United States Consul. The instrument fully complies with the requirement of proof of authority of counsel in heirship matters. (Sec. 10325, Id.)

The facts sought to be shown would not overcome this record proof, and, if error was committed in the rejection of the proof, it was but a nonprejudicial error.

It is contended that the court erred in holding that the administrator was negligent in the management of the affairs of the estate and was, therefore, chargeable with losses sustained by reason of delay in disposing of approximately one-half of the sheep.

The record discloses that the band originally consisted of 1,029 sheep, of which 251 head were sold in 1929 in obedience to the order of sale made on October 17 of that year, and 317 head were sold to Art Jurgens on credit, without security and with-

out time fixed for payment. The administrator testified that the remainder of the sheep were not sold at that time because of the slump in prices, but the record discloses that these remaining sheep were let out for a year on shares to Martin Risa and J. M. Sholtus. The contract with Sholtus was executed October 15, 1929, and that with Risa on November 26, 1929, but the return day of the contract in each instance was October 15, 1930, and the administrator testified that he made the arrangement and delivered the sheep to these two at the same time. It would seem, therefore, that, practically immediately after applying for the order of sale and before the hearing thereon, without attempting to sell these sheep, the administrator put it out of his power to sell them for the period of a year. He secured no order of court permitting him to continue the affairs of the estate as a going concern nor to let the sheep out on shares.

Counsel for the administrator assert that the court approved the manner in which the sheep were handled by confirming the report of the sales made. It is true that the settlement and allowance of accounts in the courts of administration is conclusive upon all persons interested in the estate, except those laboring under some legal disability (sec. 10303, Rev. Codes 1921), in the absence of an affirmative showing on the face of a claim that it is illegal. (*In re Williams' Estate*, 47 Mont. 325, 132 Pac. 421; *In re McLure's Estate*, 90 Mont. 502, 3 Pac. (2d) 1056.) This rule applies to the confirmation of the *sales* made and reported, but the representative cannot discharge himself by showing that his disregard of the court's order was disclosed in his report of sale which was confirmed (*In re Rinio's Estate*, 93 Mont. 428, 19 Pac. (2d) 322), and the rule cannot be held to foreclose objections to the sale made to Jurgens which was, in reality, not reported as a consummated sale, nor as the approval of the court of the action of the administrator in farming sheep out on shares. The report was merely of the sale of wool from sheep held by Risa and Sholtus on shares, without advising the court as to the contract made or the reason for its existence. As the court had ordered the sale of the sheep ''at private sale for cash,'' each of those transactions was, in effect,

"illegal." The administrator testified that there was no market in Valley county, but he did not show any attempt to sell the sheep which he let out, and, in fact, it would seem that he put it out of his power to sell them before he attempted to make any sales or had discovered, if he did, that there was no market locally, and no reason is shown why all the sheep, instead of a part, were not shipped east.

An administrator is chargeable with the whole of an estate coming into his possession, at the value of the appraisement thereof, but is not to suffer loss by reason of decrease in value or destruction, without his fault, of any part of the estate. He is not an insurer; therefore he is liable only for losses which are the consequence of bad faith or the want of due diligence in handling the estate. (Secs. 10282–10285, inclusive, Rev. Codes 1921; *In re Connolly's Estate*, 79 Mont. 445, 257 Pac. 418; *In re Jennings' Estate*, 74 Mont. 468, 241 Pac. 655.)

The court found that the administrator had not exerted due diligence; that all of the sheep could have been sold in 1929 and the estate closed within the year after his appointment, and that the estate had suffered loss by reason of the manner in which it had been handled; the court charged numerous items to the account of the administrator in an attempt to make the estate whole. The record justifies the general findings and it now becomes necessary to determine the correctness of the several charges, each of which is challenged by the administrator.

As was said in a former estate case: "We shall not take the time to consider these objections in detail. Rather, we shall follow the policy of the district court in an attempt to ascertain whether, in fact, in reaching the result announced by the court, substantial justice has been meted out." (*In re Springer's Estate*, 79 Mont. 256, 255 Pac. 1058, 1061.)

On the hearing the administrator conceded that he is liable for the amount due on the Jurgens sheep, for which he should have received cash in 1929, being $2,327.60, less $250 due Jurgens for pasture rental, and the $440.90 received for the Jurgens wool on June 27, 1930, leaving the balance $1,636.70. The court charged the administrator with this amount, declaring it should

have been a cash sale on November 15, 1929, and therefore the estate has been out of the use of the money since that date; therefore the additional charge is made of interest on $2,077.60 from November 15, 1929, to June 27, 1930, and on the $1,636.70 from June 27, 1930, to the date of the judgment, or February 27, 1934, at 8 per cent. per annum.

The administrator protests the charge of interest on the grounds that he never received the money or had the use thereof; that "no * * * administrator is accountable for any debts due the decedent, if it appears that they remain uncollected without his fault" (sec. 10284, Rev. Codes 1921); and that it was not shown that the money could have been invested during the period mentioned at any such rate as the court fixed, and that, if interest can be charged, it can only be at the rate fixed by law at the time the account is rendered. However, the court found, in effect, that the loss was through the fault of the administrator in selling the sheep on credit and even without security. Further, this was not a debt "due the decedent" within the meaning of the statute above.

The rule in this jurisdiction is that, where a personal representative has been found culpable, interest is chargeable from the date the money was received (*In re Eakins' Estate*, 64 Mont. 84, 208 Pac. 956), or when it should have been received (*In re Jennings' Estate*, above). However, the administrator can only be charged the legal rate of interest, which rate was reduced from 8 per cent. to 6 per cent., effective March 14, 1933 (Chap. 144, Laws 1933), and therefore the interest on the amount which should have been received from Jurgens should be reduced $31.10. Likewise the interest on the sale of the wagon and camp equipment should be reduced $3.10; in each instance a reduction of 2 per cent. on the principal for a period of eleven months and thirteen days.

Having determined that all of the sheep should have been sold in 1929 and that those then sold brought an average of $6.83, the court charged the administrator the difference between that figure and the average price for which the sheep were thereafter sold, on the remainder of the flock, or "Loss

delay in selling sheep, $1,077.28.'' In this computation two errors appear. The court did not take into consideration the cost of selling the sheep shipped east; this being deducted from the receipts, left the average selling price but $6.48, and the court having approved the sale of 240 sheep to Conley, that item became *res adjudicata*, under the rule above announced. This loss should, therefore, be figured at $2.33 a head on but 168 head, or $391.44, calling for a deduction of $685.84.

The court charged the administrator with the loss of 44 head of sheep, lost after all sheep should have been sold at $6.83; as above shown, these should have been figured at $6.48, entitling defendant to a further deduction of $15.40.

It is contended that the receipts for wool and lambs from the sheep held by Risa and Sholtus should compensate for this loss, but the administrator, while chargeable for losses, is not entitled to profit by continuing a business without authority, and is to account for the property as of the date received. (*In re Rinio's Estate*, above.) Further, the court might have charged the administrator with interest on the receipts from the sale of the sheep turned over to Risa and Sholtus, from the time they should have been sold and the money received, and if the administrator is entitled to be ''compensated'' for the loss of the 44 head of sheep, he has been so compensated by this forbearance.

Had the court proceeded on the theory that the administrator was an insurer, as contended by counsel for the administrator, he would have charged him with the appraised valuation of the estate as it came into his hands, rather than the amount the court determined the property could have been sold for at the time it should have been sold.

It is contended that the administrator acted in good faith and in a manner which he thought was for the best interest of the estate. This may be true, but a representative cannot so justify his acts in failing to proceed as required by law and the order of the court. (*In re Rinio's Estate*, above.)

Careful consideration of the remaining specifications discloses no further errors committed.

The proceeding is remanded to the district court of Valley county with direction to reduce the amount ordered paid by the administrator to his successor to $3,110.05, in accordance with the foregoing opinion, and, with this correction, the judgment will be affirmed. The appellant will recover his costs on this appeal from the estate.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concer.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the above decision.