### MAURY et al. v. JONES.

Circuit Court of Appeals, Ninth Circuit.
March 30, 1928.

No. 5302.

**1. Courts ⬳262(3)—Suit to quiet title to mining claims held within equitable cognizance of federal courts, irrespective of plaintiff's possession (Rev. Codes Mont. 1921, § 9479).**

Suit to quiet title to mining claims brought under Rev. Codes Mont. 1921, § 9479, which permits such an action by plaintiff whether in or out of possession, is within equitable cognizance of federal courts.

**2. Quieting title ⬳44(1)—Defendants, in suit to quiet title, had burden to disprove plaintiff's title, where record fair upon its face exhibited title in plaintiff (Rev. Codes Mont. 1921, § 9479).**

In suit under Rev. Codes Mont. 1921, § 9479, to quiet title to certain mineral claims, burden was upon defendants to disprove plaintiff's title, where record fair upon its face showed chain of title running to plaintiff.

**3. Quieting title ⬳44(4)—Evidence held insufficient to sustain burden of defendants claiming under sale of estate's property to disprove record title of plaintiff in suit to quiet title to mining claims (Rev. Codes Mont. 1921, § 9479).**

In suit to quiet title to mining claims, under Rev. Codes Mont. 1921, § 9479, in which defendants claimed as purchasers under sale of property of estate, evidence of attempted transfer by plaintiff of mining property to father's estate was insufficient to sustain defendants' burden to disprove plaintiff's record title.

**4. Trusts ⬳189—Where trustee agreeing to convey trust property to estate of which she was executrix, on condition of coexecutor's joining, erroneously executed deed as executrix, and coexecutor failed to join, deed was ineffective.**

Where trustee of certain mining property, who was also executrix of father's estate, agreed to transfer the trust property to the estate, provided her brother, who was the other personal representative, would join in the conveyance, deed, where executed by grantor as executrix of the estate, and not as trustee, and where it remained unexecuted by the other representative, was ineffective to convey title, since executrix should have had status of grantee rather than that of grantor.

**5. Trusts ⬳189—Trustee's attempted conveyance without consideration of trust property to estate of which she was executrix held void, where estate had no interest therein.**

Deed of mining property, by person holding it under express trust, to father's estate of which trustee was executrix, if executed in her capacity as trustee, was nevertheless void for want of authority, where it was given without consideration, since trustee could not enlarge one trust by impoverishing the other, and had no more authority to donate the property to the estate than she would have to give it to a stranger; conveyance being executed at instance of creditors of estate of father, who had made gift of the property for benefit of members of his family.

**6. Trusts ⬳234—Trustee under two distinct trusts cannot enlarge one by impoverishing the other.**

Person in exercise of two distinct trusts cannot enlarge one by impoverishing the other.

**7. Trusts ⬳230, 365(2)—Trustee held not barred by estoppel or laches from asserting title to property allegedly conveyed by her where deed itself showed want of consideration and improper execution (Rev. Codes Mont. 1921, § 9479).**

Trustee executing deed of mining property to estate of which she was executrix, which on its face appeared to be void because given without consideration to her as trustee, and because improperly executed by her in her capacity as executrix, held not estopped or barred by laches from seeking to quiet title under Rev. Codes Mont. 1921, § 9479, as against purchasers of property from estate.

**8. Vendor and purchaser ⬳230(1)—Purchasers are bound to take notice of form and recitals of deed under which vendor claims.**

Purchasers are bound to take notice of form and recitals of instrument attempting to convey title to their vendor.

**9. Executors and administrators ⬳349(1)—Judgment of probate court decreeing sale of estate's property held not res judicata of issue of title as against adverse claimants (Rev. Codes Mont. 1921, § 9479).**

State court sitting in probate held without jurisdiction to determine questions of title between estate and persons claiming adversely, and order and judgment for sale of estate's property in probate court was therefore not res judicata of question of title in subsequent suit to quiet title under Rev. Codes Mont. 1921, § 9479.

**10. Executors and administrators ⬳344—Probate court may not determine questions of title between estate and adverse claimants.**

Probate court has no jurisdiction to determine questions of title to real property between estate and persons claiming adversely.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit by Clara McLure Jones against Lowndes Maury and others. Decree for plaintiff, and defendants appeal. Affirmed.

Maury, Brown & Maury and Lowndes Maury, all of Butte, Mont., for appellants.

Walter L. Pope, of Missoula, Mont., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. [1] This suit was brought by appellee to quiet her title to certain mining claims in Montana, referred to as the "Combination Group." She alleged that she was the owner and entitled to possession, and that the defendants were not in possession but were asserting title. In their answer, the defendants challenged her claims, asserted ownership, but admitted they were not in possession, and affirmatively alleged that plaintiff was out of possession. Such an action, whether plaintiff is in or out of possession, is expressly authorized by section 9479 of the Revised Codes of Montana 1921, and the controversy is undoubtedly one of equitable cognizance in the federal courts. Holland v. Challen, 110 U. S. 15, 3 S. Ct. 495, 28 L. Ed. 52; Dick v. Foraker, 155 U. S. 404, 15 S. Ct. 124, 39 L. Ed. 201; Lawson v. U. S. Mining Co., 207 U. S. 1, 28 S. Ct. 15, 52 L. Ed. 65. As pointed out in this last case, Boston M. & M. Co. v. Montana O. P. Co., 188 U. S. 632, 23 S. Ct. 434, 47 L. Ed. 626, is not to the contrary.

Briefly stating the facts underlying the controversy, it appears that prior to January 31, 1918, the Combination Group was owned by the Combination Mining & Milling Company, a corporation, in which Charles D. McLure, father of the plaintiff, held 95 per cent. of the stock. In proceedings had to dissolve the corporation, the property was on that date sold at a receiver's sale to William R. McLure, one of the plaintiff's brothers. The receiver's deed was executed and delivered March 6, 1918. In payment of the purchase price the purchaser surrendered to the receiver the 95 per cent. of the outstanding stock, which his father had assigned to him, and paid in cash $11,500 to meet the demands of the minority stockholders. This cash was procured through a loan from one Murray, who took a note signed by William

and his father, secured by a mortgage upon this and other property. The father died on May 20, 1918, leaving a will in which he nominated William and the plaintiff, then unmarried, as executor and executrix. Shortly thereafter the will was admitted to probate, and they qualified and entered upon the administration of the estate. On May 21, 1920, William conveyed the property in question to the plaintiff, in trust, however, for herself and six others; five of the beneficiaries being the children of Charles D. McLure, one the wife of his only other living child, and the other a daughter of a deceased child. Such is the origin and character of plaintiff's title.

Neither in the petition for the probate of the will nor in the inventory subsequently filed was the property in dispute treated as an asset of the estate; but, upon the contrary, against contentions made from time to time by divers persons, the plaintiff and her brother William, and apparently the beneficiaries named in the trust deed, maintained that when he died, their father had no legal interest therein, but that his transfer of the corporation stock to William and the purchase of the property by the latter in January, 1918, were intended to effect an advancement or gift by the father to William for the benefit of the members of his family.

Because of the reliance placed upon it by appellants as constituting an estoppel to deny that the property belonged to the estate at the time they bid upon it at a probate sale, one incident should have special mention. On May 11, 1921, there was filed in the probate proceedings a paper entitled, "Supplemental Inventory," describing and listing the claims in the Combination Group. It bears date January 31, 1921, and opens with the words, "We, Clara McLure Jones, executrix, and William R. McLure, executor, under the last will," etc., and at the end are two lines for signatures, followed by the words, "Executor" and "Executrix." Above the word "Executrix" is the plaintiff's name, but there is no other signature. After recitals of the history of the title to the property as above narrated and a reference to the identity of interest between the heirs and the beneficiaries named in the trust deed, it declares that the executor and executrix consent and agree that the said property shall be and become a part of the estate, subject to certain conditions which are not highly material.

Explaining the incident, plaintiff testified that prior to 1921 she had removed

from Montana to Texas, and that, while she was in Montana in January, 1921, visiting at her mother's home, an attorney or agent for the largest creditor of the estate came to her, and, representing that her·brother had been guilty of misapplication of funds amounting to robbery or embezzlement, insisted that he would be prosecuted both civilly and criminally if this property was not turned over to the estate. She testified in much detail, but the upshot of the negotiations was that, out of fear lest her brother be prosecuted she consented to surrender the property to the estate, provided William would join with her in executing the requisite papers. Accordingly, the document under consideration was drawn by an attorney, and after signing it, plaintiff left it with him for filing in case William executed it. She then returned to Texas. As appears, William declined to, and in fact never did, sign, and, before the instrument got into the files, both he and his sister, the plaintiff, were removed, and an administrator was appointed to succeed them. The attorney who drew the instrument corroborated the testimony of the plaintiff that the document was to be filed only in case William joined in its execution, and further testified that a representative of the creditors urged him to file it, but that he had no present recollection of ever having done so.

Subsequently, in 1924, the defendants, being creditors of the estate, petitioned for an order requiring the administrator to sell the property at an administrator's sale, and, such order having been made, it was, after notice, put up at auction, at which defendants on June 24, 1925, bid in the entire property, consisting of 77 or 78 patented mining claims, aggregating over 1,000 acres, for $500. On July 26, 1926, three days after this suit was commenced, the sale was confirmed, and two days later the administrator accepted the $450 still remaining unpaid on the purchase price, and delivered to the defendants a deed. Such is the origin and character of the defendants' title.

[2, 3] The trial judge, who heard all of the testimony, held that the evidence failed to establish defendants' underlying contention that, in taking the receiver's deed, William McLure became the trustee of a resulting trust in favor of his father. With a record fair upon its face exhibiting title in plaintiff, the burden was, of course, upon the defendants. There is nothing inherently improbable in the theory that by the transactions of 1918, resulting in the conveyance of title to William, the father intended an advancement for the benefit of his children. The contention of the defendants is that he was very feeble at the time, and, as we have seen, he died soon thereafter. It is true that in a will executed after the receiver's sale he stated he had given nothing of his estate to any of his children, but that may have intended only to convey the idea that no one of them had received more than any other, and that therefore they should all share alike in any estate he might leave at the time of his death. He was very ill when the will was executed. Further than this, there was nothing in his conduct or declarations after William took title inconsistent with the plaintiff's theory. And as bearing upon his attitude toward his children and his intentions touching the Combination property, plaintiff introduced a letter from him, addressed to William, of date March 3, 1917, in which, after referring in some detail to the settlement of certain controversies and litigation, he used this language:

"My intention is to incorporate the Combination and let you hold either that stock or the Pan Metallic Company as a trust fund for the rest of the children. If this is done, it will require your coming East and you had best make your arrangements so you can come when I need you."

And along the same line and to the same effect were statements made by him in conversation with William, if the latter's testimony is to be credited, apparently in the latter part of 1917.

The testimony for defendants, taken at its full face value, is far from being conclusive, and, as pointed out by the trial judge, that of one, possibly the principal, defendant, who acted as attorney for the McLures in the transaction and for a considerable period thereafter, is in its tenor difficult to reconcile with some of his previous acts and utterances, before an estrangement took place culminating in his discharge as attorney for the McLure family. Upon the whole, we are inclined to agree with the court below that the defendants failed to carry the requisite burden.

[4] That being true, it follows that when, on January 31, 1921, she signed the so-called supplementary inventory, plaintiff held the property as the trustee of an express trust. Her testimony that the delivery of the instrument to the probate court was unauthorized finds corroboration not only in the testimony of the attorney in whose keeping it was left, but in its form and the absence

of William's signature. However that may be, for other reasons we are of the opinion that it was wholly ineffective as a conveyance. It purports to be the act, not of the owner of the property, but of the executor and executrix of the estate, who, if the instrument was to operate as a grant, would have the status of grantees rather than grantors; and it was signed by only one of the two who must act jointly.

[5-8] But aside from that consideration, even if we should ignore the capacity in which, by the express terms of the instrument, she acted in executing it, and assume she intended to execute it as trustee, it must be held to be void for want of power. Upon that hypothesis it was wholly without consideration. She was in the exercise of two distinct trusts, and she could not enrich one by impoverishing the other. She had no more authority to donate the property to the estate than she would have had to give it to a stranger. And, for like reasons, the instrument could not operate as an estoppel, or be deemed to establish the kindred defense of laches. Purchasers were bound to take notice of the deed under which she deraigned title and of the form and the recitals of the instrument upon the face of which it appeared not to be her act as trustee, and to be without consideration to her as trustee. The record was a plain caveat to any one choosing to deal with the property as a part of the estate.

Other pleas of estoppel or laches do not require detailed discussion. The contentions are either without support in fact, or they are wanting in essential elements to constitute such defenses. It is fair to infer from the intimate knowledge defendants had of the controversy from the beginning, if not from the small sum bid—scarcely 50 cents an acre—that they understood they were buying but a chance.

[9, 10] Nor do the orders and judgments of the probate court relating to the sale render the issue of title res adjudicata. In re Tuohy's Estate, 33 Mont. 230, 83 P. 486. We are quite unable to see how there is involved any question of comity or conflict of jurisdiction between the federal and the state court. The state court was sitting in probate and was without jurisdiction to determine questions of title between an estate and persons claiming adversely. In re Dolenty's Estate, 53 Mont. 33, 161 P. 524. See, also, Barker v. Edwards (C. C. A.) 259 F. 484, 486; Watson v. Jones, 13 Wall. (80 U. S.) 679, 20 L. Ed. 666.

The judgment is affirmed.