On September 24, 1929, Paul A. Gow, as administrator with the will annexed of the estate of Charles D. McLure, deceased, *Page 504 
regularly filed his ninth and final account. On September 27, Lowndes Maury, designated herein as the objector, being the same person as H.L. Maury, a judgment creditor of the estate and a member of the copartnership of Maury Melzner, filed exceptions and objections to the settlement of such account, alleging that the administrator should be charged with the value of what is known as the "Combination Group" of mining claims, numbering in all seventy-seven patented claims, located in Granite county, particularly described, lost to the estate through his alleged negligence; that the administrator should be charged with the sum of $1,861.46, money repaid to the McLure heirs without an order of court; that the administrator should be made to account for the sum of $517.22, paid to H.M. Fay as interest on a mortgage made by Clara McLure Jones, decedent's daughter, on the "Combination Group" of mining claims; that the administrator should be charged with the sum of $1,429.20, the amount found due by the court from Clara McLure Jones and William McLure; and that the administrator should be charged with the sum of $20,000, being the amount paid out of funds of the estate to James A. Murray in liquidation of a mortgage indebtedness covering the "Combination Group" of mining claims.
The matter came on regularly to be heard before the court, evidence was received, and thereafter the court duly made and entered an order allowing and settling the account "in all respects as the same was rendered and presented for settlement" and allowance. The objector has appealed from the order, and his several assignments of error present for decision only the question as to whether the court was in error in making its order allowing and settling the account.
This is another chapter in connection with the settlement of the estate of Charles D. McLure, who died testate May 20, 1918. Other cases determined on appeal in course of the administration are Gow v. O'Connor, 63 Mont. 536, 208 P. 900, Gow v.Cascade Silver Mines Mills Co., 66 Mont. 488, 213 P. 1092;Gow v. Maury, 68 Mont. 556, 220 P. 527, Maury v. Gow,76 Mont. 476, 248 P. 362, and Maury v. Jones, *Page 505 
(C.C.A.) 25 F.2d 412; and let it be hoped that without further procrastination the estate may be finally settled and the administrator thereof discharged. The testator's last will, dated May 12, 1918, named Clara Edgar McLure and William R. McLure, his daughter and son, to be executrix and executor thereof without bond. On June 20, 1918, they were, upon their petition, appointed as such by the court, and letters testamentary were thereupon issued to them. Later Clara Edgar McLure, by reason of marriage, became Clara McLure Jones. On August 15, 1918, an inventory and appraisement of the property of the estate in Granite county was filed, which did not embrace the "Combination Group" of mining claims, although from the time of the appointment of the executors the estate laid claim thereto and paid taxes and upkeep thereon and collected revenue therefrom.
At all times from June 20, 1918, to October 21, 1920, the objector was one of the attorneys for the executors of the will of the deceased. March 11, 1921, Clara McLure Jones, executrix, filed a supplemental inventory in the estate embracing such mining claims, wherein it is recited that these properties were sold at receiver's sale to William R. McLure, and deeded to him, and that subsequently in good faith he claimed the same as his own; that he deeded the property to Clara McLure Jones, in trust for the benefit of the heirs of Charles D. McLure, and that she holds title as such trustee; that question has arisen relative to the ownership of the property; that the condition upon which the "property is placed in the said estate, as an asset thereof, is, that if the other and remaining assets of said estate shall be ample and sufficient to pay all of the debts, obligations, disbursements, costs, fees, etc., of said estate and administration, without the necessity of selling, mortgaging or otherwise disposing of the property herein mentioned and placed as such asset, then and in that event the said property or an amount equal to the proceeds thereof, in case it can be sold or trusteed, shall revert to the said Clara McLure Jones, as such Trustee." *Page 506 
April 23, 1921, Clara McLure Jones and William R. McLure were removed as executors of the decedent's will, and on May 7, 1921, D.J. O'Connor was appointed as special administrator of the estate. September 10, 1921, an order was regularly made appointing Paul A. Gow administrator of the estate with the will annexed, and on July 26, 1922, after affirmance of the order on appeal to this court (63 Mont. 536, 208 P. 900), letters were duly issued to him. At the time of Gow's appointment, there was pending in the district court of Granite county an action entitled D.J. O'Connor, as Special Administrator, v. Clara McLure Jones et al., to quiet title in favor of the estate to the "Combination Group" of mining claims, complaint in which action was filed on February 19, 1922. On January 23, 1923, Gow filed a petition for leave to compromise this action for reasons set forth at length, to which Maury filed objections, and, after hearing, on February 28, 1923, the court made an order as prayed for in the petition, which became final.
On March 27, 1924, Maury and Melzner, as creditors of the estate, petitioned the court for an order of sale of all of the property of the estate, including the "Combination Group" of mining claims, wherein it is set forth that the title to these claims stood in the name of William R. McLure, but that Charles D. McLure died seised thereof. Gow, as administrator, filed objections to the making of an order of sale of the property, for the reason that the value of mining property was generally depressed and the time for a sale thereof was not opportune. On October 24, 1924, an order was duly made directing the administrator to sell all of the property of the estate. Pursuant to such order, all of the property was sold and a return of sales was made and filed with the court on July 1, 1925, wherein it appears that the "Combination Group" of mining claims was bid in, in person, by Lowndes Maury, on behalf of J.E. Stephenson, for the sum of $500; this being the only bid received for such property. In his return the administrator asked that the sale of this property be not confirmed, and the court so ordered, which order was *Page 507 
reversed upon appeal to this court. (76 Mont. 476, 248 P. 362.) Afterwards suit was instituted in the United States district court for Montana by Clara McLure Jones, trustee, against Maury, to quiet title to the "Combination Group" of mining claims, and the court found that as trustee she is the owner of the property, and that Maury as a purchaser at the administrator's sale acquired no interest therein. From this judgment Maury appealed to the circuit court of appeals, which affirmed the judgment. (25 F.2d 412.)
September 1, 1926, the administrator filed his eighth semi-annual account, showing disbursements as follows:
July 28, 1926, "To H.M. Fay — money loaned to estate for the payment of taxes ................. $243.00
"To McLure heirs, on account of money advanced April 17, 1925, to pay taxes .................... 1541.37"
August 12, 1926, "To McLure heirs, on account of monies advanced April 17, 1925, to pay taxes .... 77.09" ________ Total .......... $1861.46
This account was duly and regularly allowed and approved by order of court July 22, 1927; there being no objections or exceptions filed thereto.
On June 2, 1923, after hearing had upon administrator Gow's petition, he was duly authorized, empowered, and directed to mortgage the "Combination Group" of mining claims for the purpose of securing the payment of the sum of $2,514.33, found to be due to H.M. Fay, as assignee of an indebtedness secured by mortgage executed by Clara McLure Jones to one Harry Smith. In his sixth semi-annual account, regularly approved by the court, which was filed January 16, 1926, among other disbursements made, the following is shown:
April 14, 1925, "To H.M. Fay in payment of interest to March 1, 1923, on note made to Harry C. Smith, assigned to H.M. Fay and secured by mortgage on combination group ............................. $517.22" *Page 508 
While the objector was acting as one of the attorneys for the estate, on February 6, 1919, the claim of J.A. Murray was allowed, approved, and filed. This claim was based on a promissory note made by Charles D. McLure and others, and was secured by a mortgage on the "Combination Group" of mining claims. On April 30, 1919, the sum of $20,000 was paid by check by the executors in settlement of such mortgage indebtedness, and was charged and allowed as a disbursement, as shown in the account of the executors filed April 27, 1922, by order of court duly entered August 19, 1922, after a hearing on settlement of the account and of objections filed thereto, by D.J. O'Connor, as special administrator, the St. Louis Union Trust Company, a creditor, and Paul A. Gow, administrator of the estate with the will annexed. The words "allowed and approved for the sum of $16,500 this 6th day of February, 1919," are in the handwriting of the objector, who was then legal adviser for the executors.
August 19, 1922, a decree settling the accounts of Clara McLure Jones and William R. McLure was duly made and entered, wherein and whereby Clara McLure Jones and William R. McLure were charged with the sum of $1,429.20.
February 1, 1923, Gow, as administrator, filed his first account; October 5, 1923, he filed his second account; January 27, 1924, he filed his third account; July 24, 1924, he filed his fourth account; January 17, 1925, he filed his fifth account; July 29, 1925, he filed his sixth account; January 19, 1926, he filed his seventh account; and on September 1, 1926, he filed his eighth account, all of which were by the court duly and regularly heard and approved. The eighth account having been approved July 22, 1927, the administrator's bond was ordered reduced from $50,000 to $1,000, and he was allowed to furnish a personal bond in substitution, and did so. His ninth and final account, now under consideration, shows that the remaining assets of the estate consist only of a one-half interest in the "Cadji Taylor" quartz lode claim, appraised at $1,000; a one-sixteenth interest in the "Lycoming" quartz lode claim, appraised at $200; a three-eighths interest in the *Page 509 
"Nellie" quartz lode mining claim, appraised at $1,000; and a one-half interest in the "Silver Bow" quartz lode mining claim, appraised at $500. "Total appraised value of all properties now owned by estate of Charles D. McLure, deceased, $2,700." Debts presented and allowed against the estate are shown in detail and aggregate $244,184.49, including $22,989.62 due Maury Melzner. At the hearing Gow testified, and his testimony is not disputed, that, if the interests of the estate held in the several mining claims listed were sold at forced sale, they would not bring over $100, "and might not bring $25."
1. As to the "Combination Group" of mining claims, it is apparent from the record that from the beginning of the administration of the affairs of the estate, and during all of the time the objector acted as one of the attorneys for the[1] estate, they were claimed as estate property and handled as such. Thus it appears to us that the administrator was justified in making expenditures in protection and preservation of the property rights asserted therein by the estate up to the time of the sale thereof to Maury. It was the administrator's duty to protect property to which the estate asserted title, and he is not subject to criticism for so doing. And, even after Maury no longer acted in the capacity of attorney for the estate, he asserted that they belonged to the estate, as evidenced by his verified petition filed with the court on March 27, 1924, for an order directing the sale of all of the property of the estate including the "Combination Group" of mining claims, by his purchase thereof at the administrator's sale, and by his defense of his title in the action in the federal court, deraigned in consequence of the administrator's sale to him of the property. (25 F.2d 412, 415.) The action in the federal court was instituted by Clara McLure Jones to quiet title to the "Combination Group" of mining claims. And as was said by the circuit court of appeals in that case: "It is fair to infer from the intimate knowledge defendants [including Maury] had of the controversy from the *Page 510 
beginning, if not from the small sum bid — scarcely 50 cents an acre — that they understood they were buying but a chance."
The judgment of the federal court is binding between the[2] parties until reversed, without regard to adverse opinion of others. It was of binding force upon the district court, and is equally so as to this court. (In re Smith's Estate, 60 Mont. 276,199 P. 696.) The administrator cannot be held for breach of warranty, or otherwise, because of the federal court's decision. All that he offered for sale, or sold, was the right, title, and interest of the estate in and to the property. The federal court held that Maury obtained nothing by his purchase, and that adjudication disposes of the matter.
2. As to Gow's failure to collect the sum of $1,429.20, found[3] to be due and owing to the estate from Clara McLure Jones and William McLure, it satisfactorily appears from the evidence that both are insolvent. Maury's own sworn statements are sufficient in themselves to establish this fact. If uncollectible, as established by proofs, the administrator was not required, in consequence of such uncollectible indebtedness, to longer delay the final settlement of the estate. The impossible is never exacted.
3. Section 10303 of the Revised Codes of 1921 provides: "The[4] settlement of any account and the allowance thereof by the court or judge, or upon appeal, is conclusive against all persons in any way interested in the estate, saving, however, to all persons laboring under any legal disability, the right to move for cause to reopen and examine the account, or to proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution; and in any action brought by any such person, the allowance and settlement of the account is prima facie evidence of its correctness; provided, the court may, upon motion of any party interested, or upon its own motion, within sixty days after the rendition of the decree in cases of inadvertence, or within sixty days after the discovery of the facts constituting the fraud, reopen or set aside any decree of any settlement on the grounds of inadvertence or fraud." *Page 511 
Under this statute the order of the court settling and allowing the accounts of the executor or administrator are conclusive upon the estate and all persons interested therein, not laboring under any legal disability, in the absence of affirmative showing on the face thereof that claims embraced therein are illegal. (In re Dougherty's Estate, 34 Mont. 336,86 P. 38; In re Williams' Estate, 47 Mont. 325,132 P. 421.)
"The statute provides that the settlement of an account and the allowance thereof by the court or upon appeal is conclusive against all persons in any way interested in the estate, except those in whose behalf the statute contains a saving clause. The settlement is, therefore, conclusive upon the heirs, legatees and creditors, or persons succeeding to their rights. It is also conclusive upon the executors or administrators, their sureties, and their successors in interest. * * * The code makes no distinction as to conclusiveness of the order settling an account as between a final account and any other account. The decree is subject to direct attack, or to attack upon appeal, but is not subject to collateral attack, where the court had jurisdiction to render it." (12 Cal. Jur., pp. 62, 63.) And "it is competent for the court to determine all issues necessarily incident to the settlement of the account. And its order, when final, is conclusive as to all items contained in the account, although no objection to them was in fact made." (12 Cal. Jur., p. 64; Woerner's American Law of Administration, 2d ed., secs. 502, 504.)
In our opinion, the decrees and orders of the district court in probate matters, entered in the exercise of jurisdiction, are as final and conclusive as the judgments or decrees of that court in other matters within its jurisdiction. The character and finality of res adjudicata attach to its orders and decrees.
The disbursement of the funds which the objector now seeks to have charged to the administrator have all been accounted for in former accounts regularly settled and approved by the court, and, in our opinion, such adjudication is final. *Page 512 
4. What has already been said respecting the "Combination Group" of mining claims should suffice in disposition of the claim that the administrator should be held accountable for the sum of $20,000, paid to J.A. Murray in satisfaction of the mortgage indebtedness covering that property. Additionally, however, this expenditure was made by the executors of the will April 30, 1919, before their removal, while the objector was acting in the capacity of legal adviser of the estate; was shown in the account of the executors filed April 17, 1922; and was by the court, after hearing, upon objections made and filed to the settlement of the account, approved August 19, 1922. It must be considered res adjudicata under the rule herein stated.
5. We agree with the holding of this court in In re[5] Williams' Estate, supra, to the effect that a final account of an administrator or executor cannot be approved so long as there are outstanding claims against the estate which have not been paid, if there is any property in the hands of the executor or administrator available for the payment of such claims in whole or in part; and that, before a final account of the executor or administrator can be by the court approved, where there are unpaid claims, it must appear that all property available has been exhausted.
The remaining assets of the estate must be disposed of,[6] whether of little or great value; otherwise there would be a complete break in the title thereto. Since there are debts remaining unpaid, all assets of the estate must be sold, and until this has been accomplished the estate cannot be closed. Therefore the court's order approving the administrator's final account must be held in abeyance. Such remaining property should at least be offered for sale by the administrator, and, if no bids are received therefor, then, upon showing of such fact, and that the property appears to be worthless, the court would be warranted in settling the account.
The court is directed to order the administrator to offer for sale and to sell the remaining assets belonging to the estate. *Page 513 
Upon a return of such sale and the filing of a supplemental final account by the administrator, a final order may be made in settlement of the administrator's accounts. Costs of this appeal are assessed to the appellant.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES FORD, ANGSTMAN and MATTHEWS concur.