## IN RE CURTIS' ESTATE
## CURTIS ET AL. v. YOUNG ET AL.

(No. 2255; July 13, 1943; 139 Pac. (2d) 733)

302

For the appellants, there was a brief and oral argument by *Harry F. Schwartz,* of Casper.

306

308

RINER, Justice.

This cause is before the court by direct appeal proceedings instituted by Heman D. Curtis hereinafter usually referred to as the "exceptor" or "appellant" to obtain the review of a final decree of the District Court of Natrona County, in probate, settling and approving the final account of the respondents, Harriet C. Curtis and Minal E. Young, as executors of the last will and

testament of Frank G. Curtis, deceased. Respondents will generally be subsequently mentioned as the "executors" or by their individual names.

Frank G. Curtis died March 15, 1922 leaving a large estate to be administered under the terms of his will which was admitted to probate by an order of the District Court of the county aforesaid dated April 24, 1922. The same day letters testamentary were issued to Harriet C. Curtis and Minal E. Young as the executors of said will, they having been duly nominated as such therein. Appraisers of the estate were appointed May 6, 1922 and an inventory and appraisement of the estate property was duly made dated May 5, 1922 and filed June 23, of that year. This inventory disclosed assets of said estate valued by the appraisers as follows: An equity in certain real estate over and above a mortgage thereon, said equity being valued at the sum of $5,000; a half interest in a lease on certain lands in Natrona County, Wyoming valued at the sum of $6,000; and the remainder of said estate consisting of personal property was fixed at the value of $1,286,-283.83. The major portion of this personal property value was disclosed to be in 125,710 shares of stock in the New York Oil Company appraised at the sum of $10 per share or $1,257,100.

The exceptor herein is one of seven residuary legatees among whom were included the above named persons also designated in said will as the executors thereof. One-half of the residue of the estate was left to Harriet C. Curtis, the widow of the testator, and one-tweflth to each of the other six legatees.

The administration of the estate appears to have extended over the period of many years. Among the various causes of delay in procuring final settlement of the estate was the fact that there seems to have been considerable litigation affecting it, and a desire on the

part of the executors to defer the sale of the New York Oil Company stock aforesaid until a more satisfactory sale value thereof could be had. This stock was eventually disposed of to the Utilities Purchasing Corporation, a Delaware Corporation, and as the executors state, payment for said stock was received by them "in the amount of $15.25 cash and .862 of one share of stock in Empire State Oil Company, a corporation, for each share of said New York Oil Company stock, and are further to receive approximately. 55¢ (fifty-five cents) per share in cash, making a total cash consideration of $15.80 per share and the Empire State Oil Company stock for all New York Oil Company stock belonging to said estate." '

There appear to have been six annual reports filed in the office of the clerk of the District Court in Natrona County in the matter of said estate, the first of which, dated the 18th day of June, 1923, was filed the same day; the second report, dated the 19th day of May, 1924, was filed that day and on the 13th of June following there was also filed a supplement to said second report; the third report, dated April 4, 1925 was filed April 9, 1925; the fourth report, dated May 31, 1926, was filed June 3 following; the fifth report, dated August 20, 1927, was filed the same day. There does not seem to be in the record before us any paper specifically designated as the sixth report.

However, the executors in their brief in this court state that:

"The Sixth Report, in 1928, reported the sale and proceeds from the sale of the stock, listed all items of assets, claims and debts, receipts and expenditures, and petitioned for a *general order* authorizing and directing the payment by the executors of all claims, debts, taxes, expenses of administration (which included executor's compensation and their attorney fees) * * *"

Upon examination, we find a paper in the record desig-

nated "Petition" dated May 4, 1928 filed May 5, 1928 which appears to be the report as thus identified by this statement. We find also a paper entitled "Balance Sheet, F. G. Curtis Estate, May 31, 1928" and which seems to have been rather strangely stamped as filed "May 8, 1928" by the Clerk of the District Court through his deputy. Whether these two papers, the "Petition" and the "Balance Sheet" aforesaid are at all related is not at all clear.

The next report (the 7th report) submitted by the executors to the court designated "Report of Executors for the Period May 31, 1928 to May 1, 1930" is dated December 31, 1930 and was filed that day. The next subsequent eighth and final report is entitled "Report of Executors for the period from May 1, 1930 and Petition for Final Settlement." This report was dated August 8, 1941 and was filed August 15, 1941.

The record before us which consists of two volumes, one of which is of large size, discloses that on the day the first report was filed, to-wit June 18, 1923, the District Court entered an order setting said first account and report for "hearing and settlement on Monday, July 9, 1923 and providing that all persons "interested in said estate have until said time to file with the Clerk of this Court such exceptions, objections or other pleading to said exhibit and report as they may be advised." This date for filing exceptions and objections was thereafter extended to August 27, 1923 through an order dated July 16, 1923 based upon a stipulation of the executors aforesaid and Don Allen Curtis, one of the residuary legatees, this stipulation being filed July 7, 1923. On August 27, 1923 Don Allen Curtis aforesaid filed certain objections and exceptions to the first annual account and report of the executors. Issues were framed and these objections with the answer of the executors thereto were in due course heard by the court, and after this hearing by an order dated January

3, 1925, the first annual account aforesaid was "approved and allowed" with the exception of the allowance by said executors of a certain claim presented by one Whitney G. Case which seems to have been disallowed. This order was on June 30, 1925 somewhat modified as to the Case matter by an order made on that date.

The second report was approved by the court by an order dated and the form thereof filed July 1, 1925, said order stating that upon examination of said report and "there being no objections on file, and none appearing to the court, the said Account and Report is hereby in all respects approved, subject to the order of the court entered June 30, 1925." The third report was by a similar order on the date last mentioned also "in all respects approved subject to the order of the court entered June 30, 1925" and above mentioned. The fourth report was approved on September 1, 1926 by an order form dated and filed that day, said order reciting that "upon examination thereof, there being no objections on file and none appearing to the Court, the said Fourth Annual Account and Report is hereby, in all respects, approved." The record does not appear to have included an order approving the fifth report aforesaid though there are recitals in some of the papers which might lead to an inference perhaps that it had been.

The sixth report, as described above, appears to have been disposed of by the court through the entry of an order form dated May 4, 1928 and filed May 5 following, said order directing that the said executors "be, and they are hereby, authorized and directed to make partial distribution of said estate by the payment forthwith, out of funds in their hands, all debts, expenses of administration and legacies, chargeable against said estate, reserving and retaining in their hands the sum of One Hundred Twenty-six Thousand Dollars ($126,000.00) for payment of certain taxes and possi-

ble liabilities resulting from pending litigation, said petitioners thereupon to make full report and account of such payment and distribution to this Court."

The seventh report, covering the period as recited above was approved by an order form dated December 31, 1930 and filed December 31, 1930, the order reading:

"Ordered, judged and decreed that the said annual account and report of the said Executors for the period from May 31, 1928 - May 1, 1930, be and the same are hereby settled, allowed, and approved."

It will be observed as to each of the foregoing reports, none of them except the first were set down for hearing on a day certain or approved or at all confirmed by an order after such a hearing concerning which any of the parties interested were given any notice. All orders of this character seem to have been granted the executors ex parte. The eighth and final report, as stated above, was filed August 15, 1941. As required by Section 88-3601 W. R. S. 1931, notice of final settlement was duly published notifying all persons interested in the estate of Frank G. Curtis that the executors thereof would "on or before the 22nd day of August, 1941, file in the office of the Clerk of the District Court of Natrona County, Wyoming, their final account and petition for distribution of said estate, where anyone interested may examine such account and petition and file objections thereto in writing, at any time on or before September 1, 1941, and if no objections are filed thereto, they will make final settlement of said estate on September 2nd, 1941, or as soon thereafter as the matter may be heard." The time for filing objections to said final report was upon application by the appellant herein extended "until and including the 16th day of September, 1941" by an order entered August 29, 1941. This order was issued pur-

suant to the provisions of Section 88-3601 granting authority to the court to extend the time upon "cause shown." See also Section 88-2709 W. R. S., 1931.

Thereafter and on September 12, 1941 the exceptor, Heman D. Curtis, filed his objections to the final account. Summarized, the objections to said account are:

1. That the executors and their attorneys improperly claimed and were paid fees on certain items which did not constitute a part of the "amount of the estate accounted for" by said executors:

"1. Money borrowed by the Executor during the course of administration in the amount of ................................................................$828,579.88.

2. Duplicate listing (by sale price, liquidation value, refund) of items (stocks, bonds, corpus) upon which fees had already been claimed; and the amount of overvaluation in the first listing:

*Chapple Publishing Company Bonds*
Listed in 1928 at $500.00
Duplicate listing in 1937 at time of
liquidation ................................................$      3.15
Amount of overvaluation in first list..      496.85

*Wyoming Weekly Review Bonds*
Listed in 1928 at $9,100.00
Duplicate listing in 1929 at the time of
their sale ................................................$   7,000.00
Overvalued in 1928....................................   2,100.00

*Balance on Sale of New York Oil Stock*
Listed in 1928 at $82,984.55
Duplicate listing 1928, received............$  70,914.07
Overvalued on first listing.....................   12,070.48

*Tax Refunds* (2)
Listed in 1928 as part of the corpus
Duplicate listing in 1929 at the time of
refunding ................................................$218,463.27
                                                      14,248.68

Total duplication and overvaluation..$325,296.50

3. "Special Bequest" to Minal Young to be distributed among employees of companies with which Frank G. Curtis was associated at the time of his death. (Clause 12, Last Will and Testament of Frank G. Curtis) The account does not show that such money was ever distributed or "accounted for".

$ 50,000.00

Total overvaluation of the estate upon which Executors and Attorney fees were improperly computed _____ $1,203,876.38

Total monies received by the Executor as shown by his account _____ 3,679,645.29
Less above sum not part of the estate or unaccounted for _____ 1,203,876.38

"Amount of the estate accounted for" __ $2,475,768.91

Maximum Statutory fees to Executors and Attornies, including extraordinary fees to Executors, on the above sum is _____ $ 124,663.45
Fees paid to Executors and their Attornies by statutory commission, and *not* including sums paid to Attornies for unusual services _____ $ 175,655.00
Amount of fees improperly paid _____ $ 50,991.55

II. The account of the Executors fails to show what, if any distribution was made of the $50,000.00 given to, and claimed by, Minal Young for distribution among employees of companies with which Frank G. Curtis was identified at the time of his decease."

Upon these claims on behalf of the appellant, it is prayed that said account be rejected and that said executors be required to render a true account of their administration.

These objections were in due time presented to the District Court of Natrona County sitting in probate, a hearing was had thereon, and on March 16, 1942 a final decree was entered overruling the objections aforesaid

on the ground that the intermediate orders allowing the executors' and attorney's fees were res adjudicata and that the appellant had failed to move in any manner against the said orders and the reports and applications upon which they were made "within the limitations of time fixed by the probate code or code of civil procedure or at all." As to the matter of the special legacy of the testator to Minal E. Young mentioned in subdivision II of said "objection", as above recited, the court ruled in substance in said decree that the exceptor, Curtis, had no interest therein and that the reasons assigned for the disallowance of the claims of the exceptor embodied in subdivision I were also applicable to this matter.

This final decree is now at bar for a review as above stated.

It is claimed for the respondents that these orders allowing executors' fees and attorney's fees were res adjudicata as the court below decided that they were, were not questioned within the proper time and that no review thereof having been sought until after the final report was filed, no inquiry regarding them can now be maintained.

It is clear from our examination of the record, as above stated, that these orders allowing executors' and attorney's fees were made ex parte, and no notice of the reports and petitions for allowance of fees having been filed or presented to the court or that any such orders were made was given. No opportunity to file objections thereto appears to have been accorded interested parties and no hearings appear to have been had thereon. As a matter of fact, the statutes of this state, in force at the time the allowances were made by order for executors' and attorney's fees, do not seem to have provided for any general notice to interested parties until the coming in of the final report.

See § 6865, 6866, 6867, 6868, and 6974 Comp. Stats. 1920. As to notice of application for partial distribution, see § 88-3502 W. R. S. 1931.

Reliance by the executors appears to be especially based upon the provisions of § 6868 aforesaid which reads:

"The settlement of the account and the allowance thereof by the court or judge, or upon appeal, is conclusive against all persons in any way interested in the estate, saving, however, to all persons laboring under any legal disability their right to move for cause to reopen and examine the account, or to proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution; and in any action brought by any such person, the allowance and settlement of the account is prima facie evidence of its correctness."

This section as well as the three preceding sections enumerated above were in substance borrowed from the probate code of the State of California. But California and Montana which have statutes similar to Section 6868 also have specific provisions of law for notice and hearing on current accounts which do not appear in the Wyoming Statutes.

For example, in California, Deering's Code of Civil Procedure, 1923, § 1633 provides:

"When any account is rendered for settlement, the clerk of the court must appoint a day for the settlement thereof, and thereupon give notice thereof by causing notices to be posted in at least three public places in the county, setting forth the name of the estate, the executor or administrator, and the day appointed for the settlement of the account. If, upon the final hearing at the time of settlement, the court, or a judge thereof, should deem the notice insufficient from any cause, he may order such further notice to be given as may seem to him proper. (Amendment approved 1891; Stats. 1891, p. 428.)"

The editor of that code points out that when this section was enacted in 1872 by the California Legislature, it read:

"When any account is rendered for settlement, the court or judge must appoint a day for the settlement thereof; the clerk must thereupon give notice thereof, by causing notice to be posted in at least three public places in the county, setting forth the name of the estate, the executor or administrator, and the day appointed for the settlement of the account, which must be on some day of a term of the court. The court or probate judge may order such further notice to be given as may be proper."

It will be observed that the first clause of the 1872 California law just quoted is identical with § 6865 Comp. Stats. 1920, supra, but that where that section of our law ended, the California section continued on to provide specifically for notice to interested parties and by whom and how it should be given. See as practically identical with this California statute relative to notice Revised Codes of Montana, 1935, § 10299.

So we find 3 Bancroft's Probate Practice 1658, § 980 stating:

"Notice, it is said, is essential to jurisdiction to settle an account. It is commonly provided, moreover, that an account must not be allowed by the court until it is first proved that notice has been given as required by law."

And the same text, p. 1689, § 999, states in discussing the effect of statutes resembling § 6868, supra, that:

"It appears, however, that if no hearing is had, and there is no order of settlement, items included in such account may be attacked upon settlement of a subsequent account. The same is apparently true in Utah, at least, if the hearing is only ex parte. In Colorado, current accounts are always subject to further consideration and adjustment until administration is finally closed."

In view of the condition of our statutory law on this matter, it is perhaps not surprising to find that the Wyoming Legislature in 1931 very likely at the instance of the Revision Commission in charge of the revision of our statutory law in that year repealed § 6865 entirely and amended § 6866 to read as it appears in § 88-2709 W. R. S., 1931. See Laws of Wyoming, 1931, Chapter 73, Sections 131, 179. The Revision Commission was doubtless familiar with the fact that the great majority of the estates in this jurisdiction are disposed of upon final settlement shortly after the expiration of one year subsequent to their inception and that the general practice in this jurisdiction has been to regard intermediate and annual settlements in the same manner as indicated by the Supreme Court of Washington in the case of In re Krueger's Estate, infra.

And 24 C. J. 1032, § 2489 says upon the authority of an elaborate list of cases:

"Annual or partial settlements of personal representatives, when made ex parte, as they usually are, have not, like final settlements, the force and effect of judgments and so are not conclusive, but are only prima facie evidence of the correctness of the account stated, the burden of overcoming their presumption being, however, on the partly impeaching such a settlement. * * *"

Typical of the cases called to our attention in connection with § 6868, supra, is In re Grant's Estate, 131 Cal. 426, 63 Pac. 731. We find the court in that opinion pointing out that:

"It is clear that, when proper notice has been given, it is conclusive as to all items contained in it, except as against persons laboring under some legal disability. It is so expressly provided in section 1637, and has been so declared in numerous cases."

Respondents state in their brief that:

"We do not have the provision that an account must

not be allowed by the court until it is first proved that notice has been given as required by law. Again, the rule in other states that an account whether current or final can only be settled after the giving of notice required by law, is not found in our statutes. Our laws on intermediate account are similar to Washington, and other states, heretofore given, where no notice is required except on final report, unless the court requires notice."

It would seem that it is true as thus conceded by the executors that our laws regarding intermediate accounts are similar to the legal requirements in the State of Washington and other states touching matters of that character where no notice is required except relative to the final report of the executors or administrators. Hence in this connection we find it of great assistance in the case at bar to review at some length the well considered case of In re Krueger's Estate, 11 W. (2d) 329, 119 Pac. (2d) 312 and the authorities painstakingly assembled therein. The opinion in that case was filed November 22, 1941. In the course of it, we find the following very pertinent language used:

"As evidenced by our statutes, the informality in which periodical reports may be rendered and the purpose for which they are rendered preclude any inference of their finality and conclusiveness, except under certain conditions.

"Rem. Rev. Stat. § 1530 provides: 'It shall not be necessary for the executor or administrator to give any notice of the hearing of any report prior to the final report, except as in section 1434 provided, but the court may require notice of the hearing of any such report. If the court does not require such notice to be given, then at any time after ten days following the filing of any report, other than the final report, the court may hear and settle such report.'

"Under our system of estate administration, then, periodical reports may be, and generally are, heard ex parte and without notice. They were designed, first, to inform the court of the financial condition of the estate at a given date as well as the changes occurring over a

period of time, and of the progress accomplished toward the final settlement; second, to aid the legal representative in his management.

"Because the usual practice is to present periodical reports ex parte and without notice, the only opportunity to interpose objections is at the final hearing. That this was the legislative intent is clearly manifested by Rem. Rev. Stat. § 1532 and § 1533. Those sections enjoin the executor or administrator to publish notice of the time fixed for the final hearing. On that occasion, all matters affecting the estate must be minutely scrutinized. Hence, if interested parties are precluded from excepting at such time to previous interim orders approving periodical reports, not only will those parties be denied their day in court, but the assets of the estate will be jeopardized. Consequently, a sharp distinction must be drawn between interim orders entered *without notice* approving periodical reports, and final orders entered *with notice* approving final reports. An excerpt from an annotation in 86 Am. Dec. 143-146, may serve to elucidate this distinction.

" 'Effect as Res Judicata of Annual Settlements of Executors or Administrators. — The probate system generally prevailing in this country makes provision for partial settlements of administration accounts prior to the final settlement. These partial settlements are made either annually or more or less frequently, as the discretion of the court may dictate, and are called partial or annual settlements. But while all settlements of administrators' and executors' accounts are in a certain sense judicial determinations, yet there is a broad distinction between annual and final settlements. The one is wholly ex parte and without notice; the other can be made only upon due publication of notice to creditors and all persons interested. The one is made annually, or oftener, at the pleasure of the court; the other only when the estate is fully administered. The one is for the information of the court and the convenience of the administrator in the management of the estate; the other for the protection of the administrator, and is a final adjudication of the respective rights and obligations of the administrator, creditors, and heirs. The one is only prima facie correct, and is subject to correction of any errors or mistakes thereafter discovered

in it, without appeal or any direct proceeding to review it or set it aside. The other is conclusive and final, unless set aside by appeal or direct proceeding therefor, or impeached for fraud. The one is, so to speak, a judgment de bene esse, the other a final judgment: Musick v. Beebe, 17 Kan. 47. Being made ex parte without notice to the heirs, legatees, creditors, and other interested parties, partial or annual settlements do not have the force and effect of judgments, and are not conclusive upon any party interested, not even the executor or administrator himself. * * * *They are, however, prima facie correct only, and are open to collateral attack:* West v. West ('s Adm'r), 75 Mo. 204; *and all errors, omissions, or mistakes therein of the court, or of the executor or administrators, though not excepted to,* (Citing cases) *may be corrected at the instance of the court or any interested party upon a proper and sufficient showing, either at the coming in of any subsequent annual account,* * * * *or upon the final settlement of the administration accounts:* * * *

" 'We have seen that the reason of the rule that partial settlements are not regarded as res judicata is that the account is settled ex parte without notice to parties interested. Therefore, if the statutes provide for notice upon annual or partial settlements, in the same way as upon final settlements, the reason of the rule would cease, and all parties be equally concluded as to the matters embraced within the annual settlement as by a final settlement,* provided, of course, the notice is properly given.' (Italics ours.)

"Although there is authority to the contrary (See 3 Bancroft's Probate Practice (1928) 1587, § 932, and cases cited; In re McLure's Estate, 90 Mont. 502, 3 P. 2d 1056), yet a careful reading convinces us that the reason for the disagreement lies in the various legislative enactments. More specifically, the contrary authorities may be distinguished on the ground of whether or not the Probate Code commands legal notice to be given for hearings on periodical reports. If so, the order of approval is res judicata. * * *"

Mr. Freeman's able note from which, as we have seen, the court quotes extensively is attached to the case of Picot vs. O'Fallon, Exr. of Biddle, 35 Mo. 29,

86 Am. Dec. 134, which the Washington Court reviews, at some length. The Picot case is in line with the Krueger case, supra, and is also a well reasoned decision. Following the excerpt given above, the opinion in the Krueger case carefully reviews many authorities and cites many additional decisions from the leading courts of the nation.

The rule announced in the Krueger case aforesaid was reaffirmed in the quite recent opinion from the same court filed March 19, 1942 in the case of In re Peterson's Estate, 12 W. (2d) 686, 123 Pac. (2d) 733 where the court said concerning that rule:

"This rule is eminently wise and just, and the reasoning and considerations of policy upon which it rests are equally forceful when applied to orders for partial allowance of fees. The ordinary procedure for obtaining such an order is for the personal representative to move the court for an allowance, on account, of fees to himself and his attorney, without notice to other interested parties, and for an ex parte order to be entered to that effect. Because of the lack of notice, such an order should not be, and is not, conclusive in any way, and, under the rule of the Krueger case, it is subject to vacation or modification upon final accounting, at which time the whole question of the worth of the entire services of the personal representative and of his counsel is fully considered and a final allowance of fees is made. Compare, In re Thomas' Estate, 140 Wash. 296, 248 P. 804.

"The order with which we are here concerned, however, was not an interim order, nor did it partake of the nature of such an order. It purported to be a *final* order fixing the entire allowance for fees over and above what had already been allowed some years before. No such order should have been made, nor should ever be made, prior to the final accounting, for it is then that all the interested parties are given notice according to the statute and have the right to be heard upon all matters affecting the administration and distribution of the estate. When a court enters an ex parte order purporting to fix fees finally for the whole

period of administration, it is doing something which partakes of the nature of an order approving the final report, and therefore such action should be taken only on a final accounting.

"Obviously, an order such as the one made in this case cannot be binding upon interested parties who were given no notice of its proposed entry and no opportunity to be heard relative to the matters contained in it. The reasons given in the Krueger case, supra, in connection with interim orders apply with equal, if not greater, force to final orders, and such as are final in their nature."

In the case at bar the first report of the executors, already somewhat discussed, appears to have been filed only after Don Allen Curtis, mentioned above, and a residuary legatee, had petitioned the court for an order requiring such a report to be made. Pursuant to that petition the district court entered its order and directed its service upon Minal E. Young, the resident executor. After the filing of said report, a further order was made setting it down for hearing on a day certain and directing that Curtis and all interested parties should have until that date to file exceptions to said report. Exceptions by Curtis were filed, they were answered by the executors, and a hearing was had thereon as already recited. We have heretofore pointed out that the subsequent reports all appear to have been filed and only ex parte orders approving them made. The same would appear to be true in regard to the applications and orders concerning the payment of executors fees, i. e. these orders also being all made ex parte. Some of them were passed on the very day the applications were filed and others within but a few days thereafter. This appears to be true of the seventh report whereby the major portions at least of the executors' fees and attorney's fees were stated to have been paid. That report recited inter alia that there had been paid between May 31, 1928 and May 1, 1929, the first

period covered by said report, "the sums allowed by the Court for attorney's fees and executors' fees. Also, amounts in settlements of law suits, bond expense, notes and interest on notes, accounts payable and federal income tax; all of which is set forth in detail in the attached document denominated receipts and disbursements, setting forth each name and amounts paid." This "attached document denominated receipts and disbursements" does not seem to be affixed to the report as stated and the record does not disclose it so far as drawn to our attention. No objections thereto were placed on file and no contested hearings were had thereon. These facts would seem to be explainable on the basis that the record fails to show that any notice thereof had been given or required.

It is interesting to note just here before continuing this discussion that in the state of Washington definite provision is made for interested parties to obtain by written request filed with the clerk of the court "special notice of any or all of the following named matters, steps or proceedings in the administration of said estate, to-wit:

(1) Filing of petitions for sales, leases or mortgages of any property of the estate.
(2) Filing of accounts.
(3) Filing of petitions for distribution.
(4) Petitions by the executor or administrator for family allowances and homesteads."

This request must give the parties' post office address and thereafter such notice is required to be given by mail or personal service thereof made not less than five days before the hearing on such petition or account except in the case of petitions for the sale of personal property or property by retaining which loss or expense might be incurred; proof of mailing such notice

or of personal service must be filed with the clerk of the court before the hearing. "If upon the hearing it shall appear to the satisfaction of the court that the said notice has been regularly given, the court shall so find in its order or judgment, and such judgment shall be final and conclusive."

Under the authorities and decisions reviewed and cited above, it is evident that the contentions of the respondents that these orders should be held to be res adjudicata cannot and should not be upheld. It follows as a necessary corollary that if, as we think, intermediate and annual accounts and orders thereon and orders fixing executors' fees and attorney's fees are subject to correction and revision at the time of final settlement after statutory notice has been given to everyone interested in the estate and by which all such parties are bound, there can be no defense of laches invoked as to such orders and action taken under them, as the facts of this case now appear, until a decree of final settlement has been given. If interested parties fail to assert their rights then and unreasonably delay, they may very well be held guilty of laches.

It is very apparent also that it is ordinarily unwise and a serious mistake, as the Supreme Court of Washington has so very well pointed out, to allow executors' fees and attorney's fees before final settlement of an estate matter is ready to be made, and, it might be added, unless provision is fully made to handle depreciation and other losses in connection with inventoried assets as well as additional accretions to the inventoried value of the estate. As a general rule the true and correct amount of the "estate accounted for" cannot be accurately told until the estate is ready for final settlement and distribution.

The statutes governing the allowance of executors' fees and attorney's fees in connection with estate mat-

ters in Wyoming are Sections 88-2607 and 88-2608 W. R. S. 1931 (Sections 6853, 6854 Comp. Stats. Wyoming, 1920) which read:

§88-2607. "When no compensation is provided by the will, or the executor renounces all claim thereto, he shall be allowed commissions upon the amount of the estate accounted for by him, as follows: for the first one thousand dollars, at the rate of ten per centum; for all above one thousand dollars and not exceeding five thousand dollars, at the rate of five per centum; for all above five thousand dollars and not exceeding twenty thousand dollars, at the rate of three per centum; for all above twenty thousand dollars at the rate of two per centum. The same commission shall be allowed to administrators. In all cases such other allowance may be made as the court may deem just and reasonable for any extraordinary services, but the total amount of such extra allowance must not exceed one-half the amount of commission allowed by this section. All contracts between an executor or administrator, and an heir, devisee or legatee, for a higher compensation than that allowed by this section, shall be void."

§88-2608. "The attorneys of any executor or administrator shall be allowed, for his or their services, such amount as may be fixed by the court, not to exceed the amount allowed the executor or administrator; provided, however, that in all cases where the estate shall be involved in actual litigation, the court may, in its discretion, allow such attorneys greater compensation."

It will be noted that the commissions of an executor are to be allowed as the statute says "upon the amount of the estate accounted for by him." In the case of Spencer et al. vs. Pringle, 51 Wyo. 352, 67 Pac. (2d) 204, we had occasion to determine what this quoted statutory language meant and after examination of the authorities we said:

"The final account of a personal representative should show the items he is chargeable with at their inventory value as this may be corrected by reappraisement or actual sale of the several items or by evidence introduced before the court indicating their actual

value, or by loss or destruction of property. To this should properly be added all accretions to the estate which have come into the possession of the executor, such as interest, profits on sales, etc. It is then an easy matter for the court to compute, under the statute, the amount of the estate "accounted for" by its officer."

When it has been determined by the court what the amount of the estate accounted for by an executor properly is, and also whether additional commissions should be awarded that officer for extraordinary services if any are claimed as such, then so far as the executors total commissions are concerned, the matter would appear to be merely one of mathematical computation as fixed by the statute. How errors and mistakes in that respect may be rectified is pointed out in the case last cited, thus:

"The author of a most exhaustive note in 10 A. L. R. 526 at 603, supported by undoubted authority, states the rule very clearly thus:

" 'Any mere mathematical mistake or clerical error in computing the amount of a recovery, carried into a judgment or decree, when all the factors for calculating a correct result are present in the files and records of the court and the minutes and papers in the cause, is subject, when discovered, to correction by the court through a nunc pro tunc amendment.'
"See also supplementary note on the same subject and cases cited in 67 A. L. R. 828, 844."

Confirming the view expressed above concerning the calculation of executors' fees is the recent decision of the Supreme Court of California In re Lampman's Estate, 15 Cal. (2d) 212, 100 Pac. (2d) 488. It was there held approving the same rule announced in the earlier case of the Estate of Pease, 149 Cal. 167, 85 Pac. 151, "that the general rule appears to be that where property subject to an encumbrance is sold, the executor is entitled only to commissions on the net purchase price

in excess of the encumbrance." In the course of its opinion in the Lampman case, the court used the following language:

"Section 901 of the Probate Code establishes the right and fixes the measure of the commission of executors and administrators. Said section reads as follows: 'The executor, when no compensation is provided by the will or he renounces all claim thereto, or the administrator, shall receive commissions upon the amount of estate accounted for by him, as follows: For the first thousand dollars, at the rate of seven per cent; for the next nine thousand dollars, at the rate of four per cent; for the next ten thousand dollars, at the rate of three per cent; for the next thirty thousand dollars, at the rate of two per cent; and for all above fifty thousand dollars, at the rate of one per cent. * * *' Section 910 of the Probate Code establishes the fees of attorneys upon the same basis as those of executors and administrators.

"It is apparent that 'the amount of the estate accounted for' is the base for reckoning commissions, and that once this figure is established the matter of determining the correct statutory fees is merely a matter of computation. 11 B Cal. Jur., P. 461, sec. 1025; Estate of Straus, 144 Cal. 553, 556, 77 P. 1122."

Passing now to the specific objections interposed to the final report and account of the executors in the instant case, we note that appellant claims in his brief that "the statute (88-2607) provides that on the amount of the estate accounted for above $20,000.00, executors shall have a 2% commission. The uncontested value of this estate is far in excess of that amount, so only the 2% scale is involved. The same statute also provides that for extraordinary services, the court may allow up to one-half the regular commission in addition thereto.

"In this estate, the executors have taken the 2% reg-

ular commission, and the 1% extraordinary commission on all of the following contested items:

1. Money borrowed for purposes of administration, but which did not increase the amount of the estate accounted for...............$828,579.88
2. Overvaluation of Chapple Publishing Co. bonds ................................................................... 496.85
3. Overvaluation of Wyoming Weekly Review Bonds.................................................... 2,100.00
4. Overvaluation of money to be received from the sale of the New York Oil Company stock ...................................................... 12,070.48
5. Tax refund ............................................... 189,522.08

Total........................................$932,769.29

It is also said that "if the $50,000.00 'special legacy' has not been accounted for, an unwarranted commission of 3%, or $1,500.00, has been taken thereon."

As to the statement by appellant that "only the 2% scale is involved" relative to § 88-2607 this is clearly not so. The language of the statute forbids such construction. All of the rates mentioned in the statute viz. 10%, 5%, 3%, and 2% are each to be invoked in properly calculating commissions in the estate of the magnitude here involved. This is merely a matter of mathematical calculation in order to comply with the plain provisions of the statute.

If it be true, as apparently claimed by the exceptor, that the executors did take commissions on money borrowed for administration purposes which did not increase the value of the estate accounted for; if they took commissions on overvaluation of the bonds above listed and on overvaluation of the New York Oil Company stock sold as these values were ultimately and correctly found to be; and also on tax refunds which were obtained because the tax monies were incorrectly taken from the estate by the tax authorities, then the commissions allowed the executors should be revised

and the proper amounts fixed. This duty rests upon the District Court of Natrona County in probate in this matter and until that court acts thereon, we may not review its action concerning the same. As the cause now stands before this court, the final decree summarized above explicitly shows that the court below declined to pass upon these questions.

What is done by the probate court as to the executors'fees will necessarily, as § 88-2608, supra directs, be controlling as to attorney's fees bearing in mind always the proviso in that section set forth as quoted above. In this connection it may very well be recalled that in the Pringle case, supra, we further said:

"It is also urged for the appellant that the trial court interpreted Section 88-2608, W. R. S. 1931, supra, to mean that for extraordinary services the attorney for the executor is limited in amount to a sum no greater than may be allowed to the executor. If that were so, then we think, the trial court was mistaken. Reed v. Taliaferro, 37 Wyo. 107, 113, 259 Pac. 815, 2 Bancroft's Probate Practice, Sec. 438, p. 821. If the view suggested as held by the trial court were to prevail, it would in such event often be impossible to conduct exhaustive and important litigation by which the estate would be either greatly benefited or its very existence preserved."

So far as the special legacy of $50,000.00 to Minal E. Young is concerned, if upon examination of the fact it be shown that that amount was actually paid over to the legatee or legatees entitled to receive the same under the will of the testator, there seems to be no reason, as we are at present advised, why statutory commissions should not be allowed to the executors upon that part of the corpus of the estate for which account is thus made.

In subdivision II of the objections to the executors final account, as we have quoted it hereinbefore, the claim is made that the executors account fails to show

the distribution of the $50,000.00 legacy "given to and claimed by Minal Young for distribution among employees" of certain companies with which the testator was identified at the time of his decease. This claim is not clear to us as to what is intended to be asserted thereby. If the language thereof is to be interpreted as meaning that the executors had not reported to the court the payment to Young of this special legacy, the court should of course require an account as to that payment. If this language should be construed to mean that the executors should account for and show what Young has done with the $50,000.00 which has, in fact, been paid him, then it is apparent that the court below ruled correctly that the exceptor has no interest in the matter as that now stands. If there should be any question as to the validity of the special bequest to Young as it was described in the testator's will and that the residuary legatees or anyone of them should assert that that question ought to be resolved, that is a matter for litigation in the proper forum between Young as special legatee and the residuary legatees or some or any one of them. Whether the legacy be held valid or invalid upon a hearing or trial conducted between interested parties, such determination would necessarily be a final order reviewable here. However, as the cause now stands, this is a matter upon which the District Court does not seem to have ruled and could not very well rule so far as the phraseology of the claim as set forth in the "Objection to Final Account" is concerned.

We cannot refrain from saying that the record submitted shows here, as was intimated it showed in the Pringle case, supra, that some of the forms of annual and intermediate accounts are "not at all desirable" as tending to clarify what should have been a simple mat-

ter of accurate and technical accounting. We have already adverted to the fact that one of the reports, the fifth, is not accompanied with an order approving it. Other reports do not have the accounts itemized or in such form as to be readily comprehended. No vouchers are attached to a number of them. In an estate as large as this one, it is imperative that the utmost care should have been exerted to have every matter handled by the executors with precision and nicety as directed by statutory law, and their current reports should have reflected that precision.

No other alternative appears to be open in the disposition of this case than to enter an order reversing the decree below and remanding the cause with instructions for further proceedings therein not inconsistent with the views herein expressed.

*Reversed.*

KIMBALL, Ch. J., and BLUME, J., concur.